UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUAN CARLOS DE JESUS RODRIGUEZ
et al.,

                      Plaintiffs,

      -against-

OBAM MANAGEMENT INC., et al.,

                  Defendants.

---

13cv00463 (PGG) (DF)

**AMENDED[1] REPORT AND RECOMMENDATION**

**TO THE HONORABLE PAUL G. GARDEPHE, U.S.D.J.:**

       Several of the defendant employers named in this wage case having settled with the plaintiff workers, what remains before this Court is a reference for a damages inquest as to three defaulting defendants – Pita Grill Chelsea LLC ("PG Chelsea"), Pita Grill of Hoboken, Inc. ("PG Hoboken"), and Bennett Orfaly ("Orfaly") (referred to herein as "Defendants").[2]  For the reasons that follow, I recommend that plaintiffs Juan Rodriguez ("Rodriguez"), Luis Lliguin ("Lliguin"), Mario Gomez ("Gomez"), Manuel Angamarca, Livio Angamarca, Antonio Marte

---

    [1] As discussed in detail below, courts in this District have been split as to whether a plaintiff who has sued for unpaid wages under both the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") may recover liquidated damages, simultaneously, under both statutes.  At the time this Court issued its original Report and Recommendation in this case, this Court was of the view that a simultaneous award was permissible, but, upon further review of the evolving law, this Court's view has now changed.  As no final judgment has yet been entered in this case, this Court has issued this Amended Report and Recommendation, reflecting its changed reasoning.  In addition to affecting the sections herein related to liquidated damages (*see* Discussion, *infra*, at Sections II(A)(1) and (B)(1)), this Court's changed reasoning also affects the sections regarding the amount of prejudgment interest that should be awarded (*see* Sections II(A)(2) and (B)(2)).

    [2] The other defendants previously named in this action included Obam Management Inc., d/b/a Pita Grill ("Obam Management"), PitaGrillNYC Corp., d/b/a Pita Grill ("PGNYC"), Pita Grill of NY, Inc., d/b/a Pita Grill ("PG of NY"), Chanos Management LLC, d/b/a Pita Grill ("Chanos Management"), Ofer Biton ("Biton"), Kelum Wijesooriya Patabending ("Patabending"), and Juan Manuel Perez ("Perez").

("Marte"), and Oscar Tenango ("Tenango") (collectively "Plaintiffs") be awarded damages from Defendants under the FLSA and the NYLL in the amounts set out below, for unpaid wages, overtime, spread of hours pay, and liquidated damages, plus attorneys' fees, costs, and pre-judgment interest.

## BACKGROUND

### A.     Factual Background

Given Defendants' default, the well-pleaded allegations contained in Plaintiffs' operative pleading (the Third Amended Complaint, dated July 12, 2013 ("3d Am. Compl.") (Dkt. 22)), as summarized briefly here and in more detail below, are deemed to be true, except for those allegations relating to damages.  (*See* Discussion *infra*, at Section I(A)(1); *see also*, *e.g.*, *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011).)  With respect to Plaintiffs' claims for damages, this Court also refers to Plaintiffs' Proposed Findings of Fact and Conclusions of Law, with accompanying declarations and exhibits, which have been submitted in connection with this damages inquest.  (*See* Proposed Findings of Fact and Conclusions of Law, dated Feb. 18, 2014 ("Proposed Findings") (Dkt. 91).)

Essentially, Plaintiffs have pleaded that they were each employed as a delivery worker and/or a cleaner (or, in the case of Rodriguez, a cook) at one or more fast-food restaurants located in New York City and Hoboken, New Jersey, specifically including Manhattan restaurants located at 441 Third Avenue ("Pita Grill Third Avenue"), 1083 Second Avenue ("Pita Grill 57th Street"), 92 Eighth Avenue ("Pita Grill Chelsea"), 291 Seventh Avenue ("Pita Grill Seventh Avenue"), and 1570 First Avenue ("Pita Grill First Avenue"), and a Hoboken restaurant

located at 324 Washington Street ("Pita Grill Hoboken").  (*See generally* 3d Am. Compl.)[3]  All

of these restaurants are alleged to have been part of a single "Pita Grill" chain.  (*See id.*)

According to Plaintiffs, "the various Pita Grill locations were operated in a coordinated manner,

with employees often sent from one location to another."  (*See* 3d Am. Compl. ¶¶ 50, 68, 85,

104, 124, 142, 158.)  Plaintiffs claim that, to varying degrees, they were each deprived of

statutorily required minimum wage and overtime pay by the defendants named in this action (*see

generally id.*), who, Plaintiffs generally contend, "had the power to hire and fire [them],

controlled the . . . terms and conditions of [their] employment, and determined the rate and

method of [their] compensation" (Proposed Findings ¶ 4; *see also* 3d Am. Compl. ¶¶ 32, 33,

34, 35).

       As noted above, a number of defendants, operating several of the above-referenced

restaurants, have settled Plaintiffs' claims against them, and Plaintiffs do not specify the extent to

which they have already recovered for their claimed losses, as a result of those settlements.[4]

Each of the Plaintiffs, however, regardless of the location(s) where he worked, still seeks a

judgment against defendant Orfaly (one of the individual defendants who defaulted and has not

settled), on the ground that Orfaly was "involved in the operation and management of *all* [Pita

Grill] locations" (Proposed Findings ¶ 3 (emphasis added); *see also* 3d Am. Compl. ¶¶ 4, 32),

---

[3] Each plaintiff claims that he was "ostensibly employed as a delivery worker," but was also required to perform other duties during the course of his employment, such as vacuuming, sweeping and mopping, cleaning the kitchen, refrigerators and bathroom, washing the sidewalk, receiving and stocking deliveries of vegetables, cutting vegetables and meats, and cleaning the grill and other kitchen utensils.  (Proposed Findings ¶¶ 6, 9, 11, 13, 15, 17, 19.)

[4] The defendants that have settled include Obam Management, whose "principal place of business" was alleged to be Pita Grill Third Avenue (3d Am. Compl. ¶ 25), PGNYC, whose "principal place of business" was alleged to be Pita Grill 57th Street (*id.* ¶ 27); PG of NY, whose "headquarters" was alleged to be Pita Grill First Avenue (*id.* ¶ 28); and Chanos Management, whose "headquarters" was alleged to be Pita Grill Seventh Avenue (*id.* ¶ 29).

and should thus be held personally liable to each Plaintiff on all asserted claims (Proposed Findings ¶ 38). Presumably, each Plaintiff would be entitled to enforce such a judgment to the extent he has not been able to recover fully from the settling defendants. Additionally, as discussed further below, plaintiff Rodriguez seeks an award of damages from PG Chelsea and PG Hoboken, as he alone, among the Plaintiffs, worked at the Pita Grill locations operated by these two defaulting defendants. (*See* 3d Am. Compl. ¶¶ 26, 30.)

B.   **Procedural History**

Plaintiffs commenced this action by filing a Complaint on January 22, 2013 (Dkt. 1); after two other amendments, the Third Amended Complaint became the operative pleading on July 12, 2013 (Dkt. 22; *see also* Dkt. 17 (granting leave to amend)).

Defendants PGNYC, Obam Management, and Briton answered the Third Amended Complaint on September 9, 2013 (Dkt. 42), and Plaintiffs eventually settled their claims against these defendants (*see* Dkts. 78, 88, 94 (dismissing claims against these defendants with prejudice)).

The remaining defendants failed to respond to the Third Amended Complaint, and the Clerk of Court entered certificates of default against PG Chelsea, PG Hoboken, PG of NY, Chanos Management, Orfaly, and Patabendig on September 13, 2013 (Dkts. 45-50), and against Perez on September 16, 2013 (Dkt. 52). Plaintiffs then move by order to show cause for a default judgment against these defendants. (Dkt. 76.)

On January 14, 2014, following a hearing, the Honorable Paul Gardephe, U.S.D.J., entered an Order of Default against defendants PG Chelsea, PG Hoboken, PG of NY, Orfaly, and Patabendig, and referred the matter to this Court for an inquest on damages. (Dkt. 85.) Judge Gardephe denied the motion for default judgment as to defendants Chanos Management

and Perez (*id.*), and Plaintiffs' claims against these two defendants were subsequently settled and dismissed with prejudice (*see* Dkts. 89, 93, 95).

This Court directed Plaintiffs to file Findings of Fact and Conclusions of Law pertaining to their damages claims against the five defendants who remained in the action (Dkt. 86), and Plaintiffs did so on February 18, 2014 (Dkt. 91). Defendants PG of NY and Patabending filed a response to Plaintiffs' Proposed Findings on March 20, 2014 (Dkt. 98), eventually leading to a settlement and dismissal with prejudice of Plaintiffs' claims against these two defendants (Dkts. 99, 100, 101). This left only three defendants – PG Hoboken, PG Chelsea, and Orfaly.

Following the dismissal of Plaintiffs' claims against defendants PG of NY and Patabending, however, the entire action was mistakenly marked as terminated on the Docket, even though the claims against defendants PG Chelsea, PG Hoboken, and Orfaly had not yet been resolved. (*See generally*, Dkt.) As a result of the docketing error, it appeared to this Court that all claims against all defendants had been dismissed. It was not until just prior to the issuance of its original Report that this Court was made aware of the outstanding reference for a damages inquest as to defendants PG Chelsea, PG Hoboken, and Orfaly. Plaintiffs' damages claims against these three defendants are therefore addressed herein.

## DISCUSSION

I.  **DAMAGES THAT SHOULD BE AWARDED TO PLAINTIFFS FROM THE THREE REMAINING DEFENDANTS FOR MINIMUM WAGE, OVERTIME, SPREAD-OF-HOURS PAY, AND WAGE NOTICE VIOLATIONS**

   A.  **Applicable Legal Standards**

      1.  **Default Judgment and Damages**

"[D]efault is an admission of all well-pleaded allegations against the defaulting party."

*Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (citation

omitted). Although a "'default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability,'" it does not reach the issue of damages. *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).   In conducting a damages inquest, the Court accepts as true all of the factual allegations of the complaint, except those relating to damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 64-65 (2d Cir. 1981) (citations omitted).

A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages. *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered and the court will then determine whether the relief flows from the facts) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).   The burden is on the plaintiff to "introduce sufficient evidence to establish the amount of damages with reasonable certainty," *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12cv01369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013), *report and recommendation adopted*, 2013 WL 4505255 (Aug. 23, 2013) (citations omitted), although the plaintiff is entitled to all reasonable inferences in its favor based upon the evidence submitted, *see U.S. ex rel. Nat. Dev. & Const. Corp. v. U.S. Envtl. Universal Servs., Inc.*, No. 11cv730 (CS), 2014 WL 4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation).

Where a defaulting defendant has not made any submission on a damages inquest, the Court must assess whether the plaintiff has provided a sufficient basis for the Court to determine damages, *see Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997), and the Court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs alone, *see, e.g., Garden City Boxing Club, Inc. v. Hernandez*,

No. 04cv2081 (LAP) (DF), 2008 WL 4974583, at *4-5 (S.D.N.Y. Nov. 24, 2008) (determining the adequacy of plaintiff's damages claim based solely on its submitted proofs where defendant neither responded to plaintiff's submissions with respect to its claimed damages nor requested a hearing.  While the Court may hold a hearing to assess the amount of damages that should be awarded on a default, *see* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages as necessary), the Second Circuit has consistently held that "[b]y its terms, [Rule] 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court," *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *accord Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given much discretion to determine whether an inquest hearing need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing" (citations omitted)).

## 2.      Burdens of Proof in Wage Cases, Where Defendants' Records Are Inadequate or Have Not Been Produced

In an FLSA case, the burden falls on the plaintiff-employee to demonstrate "'that he performed work for which he was not properly compensated.'"  *Santillan*, 822 F. Supp. 2d at 293-94 (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946), *superseded on other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. § 251, *et seq.*).  As noted by the Supreme Court, however, employees "'seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy.'"  *Id.* at 294 (quoting *Anderson*, 328 U.S. at 687) (alteration in original).  Employers, on the other hand, have a duty to maintain such records pursuant to Section 11(C) of the FLSA, and, thus, the "easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to 'secur[e] the production of

such records' from the employer." *Id.* (quoting *Anderson*, 328 U.S. at 687) (alteration in original).

A defaulting defendant "deprive[s] the plaintiff of the necessary employee records required by the FLSA, thus hampering [the] plaintiff's ability to prove his damages." *Id.* As a result, where a defendant defaults, a plaintiff may meet his burden of proof "by relying on recollection alone" to establish that he "performed work for which he was improperly compensated." *Id.* at 293-94 (finding, in a default context, that plaintiff provided a "sufficient basis for [the] determination of damages" where he "submitted a sworn declaration containing information as to hours worked and rates of pay based on estimation and recollection," even where the plaintiff's submission was "general and not detailed" (internal quotation marks and citations omitted)). "Moreover, in the absence of rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Id.* (internal quotation marks and citations omitted). Under New York law, courts actually "go[] one step further and require[] that employers who fail to maintain the appropriate records 'bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Id.* (quoting N.Y. Lab. Law § 196-a).

### 3.        FLSA and NYLL Statutes of Limitations

Under the FLSA, the applicable statute of limitations is generally two years, but is extended to three years upon a finding that the FLSA violations by an employer were willful. 29 U.S.C. § 255(a). Willfulness under the FLSA is found where an employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Moreover, "a defendant's default, in itself, may suffice to support a finding of willfulness." *Santillan*, 822 F.

Supp. 2d at 297.  The applicable limitations period for NYLL claims is six years.  N.Y. Lab. Law § 663(3).

Although the date when the complaint is filed is generally the date from which the applicable limitations period must be calculated, the analysis is somewhat different for an FLSA collective action.  For a collective action, the FLSA provides that the action is considered commenced for each individual plaintiff:  "(a) on the date the complaint is filed, if [the individual plaintiff] is specifically named as a party plaintiff in the complaint . . . or (b) . . . on the subsequent date on which such written consent [to become a party plaintiff] is filed in the court . . . "  29 U.S.C. § 256.  This statutory scheme applies only to claims brought under the FLSA, however, and NYLL claims brought by opt-in plaintiffs relate back to the filing date of the original pleading, as long as the requirements of Rule 15(c) of the Federal Rules of Civil Procedure are satisfied.  *See Charvac v. M & T Project Managers of New York, Inc.*, No. 12cv05637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (holding that statute of limitations for FLSA claims was governed by date that consent forms were filed, while limitations period for NYLL claims was governed by date of the original complaint), *report and recommendation adopted as modified*, 2015 WL 5518348 (Sept. 17, 2015); *Lopez v. Setauket Car Wash & Detail Ctr.*, No. 12-CV-6324, 2015 WL 136336 (LDW) (ARL), at *3 (E.D.N.Y. Jan. 7, 2015) (finding that NYLL claims relate back to original filing date because such claims are not subject to the FLSA provision regarding commencement of a collective action).  Under this standard, NYLL claims are deemed to relate back to the original filing date if there is a "common core of operative facts linking the amendments and the original complaint," and the defendant has been "fully apprised of the nature of these claims and [is] not prejudiced by the

inclusion of [the] additional [p]laintiffs." *Lopez*, 2015 WL 136336, at *3 (quoting *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 397 (E.D.N.Y. 1998)).

**4.      Minimum Wage and Overtime Damages
Available Under the FLSA and NYLL__**

Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum wage for the first 40 hours that he or she worked in a given work week.  29 U.S.C. § 206(a). Moreover, an employee is entitled to be paid for overtime hours (*i.e.*, hours exceeding 40 per week), at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." *Id.*, § 207(a)(1).  Accordingly, where an employee is not paid at least the minimum wage, the FLSA will provide recovery of the statutory minimum wage for the first 40 hours per week, plus one and one-half times the minimum wage for hours worked thereafter.  *See, e.g.*, *Chun Jie Yin v. Kim*, No. 07cv1236 (DLI) (JO), 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (adopting report and recommendation and noting that "[t]he FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the statutory minimum wage) for hours worked above 40 hours per week" (citations omitted)).  A plaintiff with a successful minimum-wage claim under the FLSA is entitled to recover damages up to, but not exceeding, these statutory amounts.  *See Santillan*, 822 F. Supp. 2d at 293.  For the time periods relevant to this action, the federal minimum wage was $7.25 per hour, 29 U.S.C. § 206(a)(1)(C), and the corresponding overtime pay requirement (*i.e.*, 150 percent of that rate) was $10.88 per hour, *see id.*

Pursuant to the NYLL, a prevailing plaintiff is entitled to recover "the full amount of wages owed, not just the statutory minimum wage for the hours worked." *Chun Jie Yin*, 2008 WL 906736, at *4; *see also* N.Y. Lab. Law § 198(3) ("All employees shall have the right to recover full wages . . . accrued during the six years previous to the commencing of such

10

action.").  Where, however, a plaintiff-employee was not owed more than the minimum wage,

then the statutory rates come into play.  For the periods relevant to this action, the statutory

minimum wage in New York State was $6.75 per hour in 2006, and it was raised to $7.15 on

January 1, 2007.  N.Y. Lab. Law § 652(1).  The state minimum wage increased again on July 24,

2009, to $7.25 per hour, and did not change again during the time periods relevant to this action.

*Id*.  The NYLL, like the FLSA, mandates payment at one and one-half times the regular normal

rate for each hour worked by an employee in excess of 40 hours per week.  12 N.Y.C.R.R.

§ 146-1.4.

Although a plaintiff may be "entitled to recover unpaid minimum wages and overtime

pay under both the FLSA and the [NYLL], [he or she] may not recover twice."  *Cao v. Wu Liang*

*Ye Lexington Rest., Inc.*, No. 08cv3725 (DC), 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30,

2010).  Instead, "[w]here a plaintiff is entitled to damages under both federal and state wage law,

a plaintiff may recover under the statute which provides the greatest amount of damages."

*Wicaksono v. XYZ 48 Corp.*, No. 10cv3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y.

May 2, 2011), *report and recommendation adopted*, 2011 WL 2038973 (May 24, 2011) (internal

quotation marks and citation omitted).  Thus, when calculating minimum-wage damages, the

higher of either the FLSA or the New York minimum wage should be used for any period

covered by both statutes.  *Wicaksono*, 2011 WL 2022644, at *3.

**5.     Spread of Hours Pay Pursuant to the NYLL**

Under the NYLL (but not the FLSA), in addition to receiving damages for unpaid regular

wages and overtime, an employee is entitled to receive "spread-of-hours" pay, which is "one

hour's pay at the basic minimum hourly wage rate" for any workday that lasts longer than 10

hours.  12 NYCRR § 142-2.4(a); *see also* N.Y. Lab. Law §§ 650 *et seq.*  "Spread of hours

11

compensation is calculated by multiplying the minimum wage by the number of days an employee worked more than ten hours." *Angamarca v. Pita Grill 7 Inc.*, No. 11cv7777 (JGK) (JLC), 2012 WL 3578781, at \*8 (S.D.N.Y. Aug. 2, 2012), *report and recommendation adopted* Dec. 14, 2012 (slip op.).

### 6.   Wage Notice Requirements

#### a.   Wage Statements

Pursuant to New York's Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL that was made effective as of April 9, 2011, employers are required to

> 'furnish each employee with a statement with every payment of wages, listing the following' information:  (1) the dates of work covered by that payment of wages; (2) the employee's name; (3) the employer's name, address, and telephone number; (4) the rate or rates of pay and basis thereof; (5) gross wages; (6) deductions; (7) allowances, if any, claimed as part of the minimum wage; and (8) net wages.

*Salinas v. Starjem Rest. Corp.*, No. 13cv2992, 2015 WL 4757618, at \*13 (S.D.N.Y. Aug. 12, 2015) (quoting N.Y. Lab. Law § 195(3)); *see also Baltierra v. Advantage Pest Control Co.*, No. 14cv5917 (AJP), 2015 WL 5474093, at \*10-11 (S.D.N.Y. Sept. 18, 2015).  Prior to February 27, 2015, *i.e.*, during the periods relevant to this action, "the WTPA entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per work week, not to exceed $2,500."  *Baltierra*, 2015 WL 5474093, at \*10 (citation omitted); *accord Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 501 (S.D.N.Y. 2015); *see also* 2010 N.Y. Laws ch. 564 § 7, *amending* N.Y. Lab. Law § 198(1-d).

#### b.   Wage Notices

In addition, beginning April 9, 2011, the WTPA required employers to provide written wage notices "on or before February first of each subsequent year of the employee's employment with the employer."  N.Y. Lab. Law § 195(1)(a) (eff. April 9, 2011 to Feb. 27, 2015).  The wage

notice was required to be "in English and in the language identified by each employee as the

primary language of such employee," *id.*, and was required to contain the following information:

> (1) the rate or rates of pay and basis thereof; (2) allowances, if any,
> claimed as part of the minimum wage, including tip, meal, or
> lodging allowances; (3) the regular pay day designated by the
> employer; (4) the employer's name; (5) any 'doing business as'
> names used by the employer; (6) the physical address of the
> employer's main office or principal place of business, and a
> mailing address if different; (7) the employer's telephone number;
> and (8) such other information as the commissioner deems material
> and necessary.

*Salinas*, 2015 WL 4757618, at *13.  Prior to February 27, 2015, "the WTPA entitled employees

to recover statutory damages for wage notice violations of $50 per work week, not to exceed

$2,500."  *Baltierra*, 2015 WL 5474093, at *11; *accord Inclan*, 95 F. Supp. 3d at 501-02; *see also*

2010 N.Y. Laws ch. 564 § 7, *amending* N.Y. Lab. Law § 198(1-b).

### 7.    Joint and Several Liability of "Employers" Under the FLSA and NYLL

The FLSA imposes liability on "employers," a group that is "broadly define[d] [to

include] 'any person acting directly or indirectly in the interest of an employer in relation to an

employee.'"  *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 342-43 (S.D.N.Y. 2005)

(quoting 29 U.S.C. § 203(d)).  "The definition of "employer" is similarly expansive under New

York law, encompassing any 'person employing any [employee].'"  *Id.* (quoting N.Y. Lab. L.

§§ 2(6)).  To determine whether a party qualifies as an "employer" under both statutes'

"generous definitions," the relevant inquiry is "'whether the alleged employer possessed the

power to control the workers in question, . . . with an eye to the economic reality presented by

the facts of each case.'"  *Id.* (quoting *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir.

1999)).

"[W]hen examining the 'economic reality' of a particular situation," courts will evaluate various factors, none of which, individually, is dispositive. *Id.* These factors include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting *Herman,* 172 F.3d 132, 139 (2d Cir. 1999)). Further, "'[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages.'" *Id.* (quoting *Moon v. Kwon,* 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002), and finding defendants jointly and severally liable under both the FLSA and the NYLL).

### B.        **Plaintiffs' Individual Damages Claims**

As a threshold matter, Plaintiffs' submissions are sufficient to meet their burden of proof to establish minimum wage and overtime damages, such that a hearing here is not required. *See Fustok*, 873 F.2d at 40 (noting that the district court has the discretion to determine whether a hearing is necessary). As noted above, in the context of a default, where the defendant has neither provided any employment records, nor otherwise rebutted the plaintiff's damages claims, it is sufficient for a plaintiff to rely on his "recollection alone" to establish the hours he worked and the rates he should have been paid. *Santillan*, 822 F. Supp. 2d at 294 (internal quotation marks and citations omitted). In this case, the well-pleaded factual allegations set out in the Third Amended Complaint, which are accepted as true for purposes of this inquest, set out Plaintiffs' recollections regarding the hours they worked and the rates of pay they earned. (3d Am. Compl. ¶¶ 48-168.) This Court finds that these allegations, together with the computations

that Plaintiffs have provided with their inquest submissions, are enough to enable the Court to

assess damages.[5]

This Court further finds that, by virtue of their default, the three Defendants that are the

subject of this inquest may be considered willful violators of the FLSA, thereby entitling

Plaintiffs to the benefit of a three-year (rather than a two-year) statute of limitations period on

their FLSA claims.  *See Santillan*, 822 F. Supp. 2d at 297.  This Court notes, however, that

Plaintiffs' proposed FLSA damages calculations, while appropriately based on a three-year

limitations period, do not adjust for the fact that four of the seven Plaintiffs – Manuel

Angamarca, Livio Angamarca, Marte, and Tenango – were not named in the original Complaint,

but rather consented to join this action after it was originally commenced.  (*See generally*,

Proposed Findings.)  Thus, while an FLSA limitations period commencing January 22, 2010,

three years before the Complaint was filed, should be used for calculating FLSA damages for

plaintiffs Rodriguez, Lliguin, and Gomez (*see* Compl. (Dkt. 1) (naming these plaintiffs)), the

FLSA statute of limitations for the remaining four plaintiffs should be calculated based on the

dates when they filed their consent forms to become party plaintiffs to the action.  *See* 29 U.S.C.

§ 256.  Specifically, for plaintiffs Manuel Angamarca and Livio Angamarca, the FLSA

limitations period should be considered to have commenced on April 10, 2010 (*see* Dkts. 4-5

(consent forms filed April 10, 2013)); for plaintiff Marte, the period should be considered to

have commenced on July 11, 2010 (*see* Dkt. 19 (consent form filed July 11, 2013)); and, for

plaintiff Tenango, the period should be considered to have commenced on June 14, 2010 (*see*

Dkt. 16 (consent form filed June 14, 2013)).  In the sections that follow, this Court has adjusted

---

[5] Most of the Plaintiffs have also submitted Affidavits with the Proposed Findings,
reiterating the pleaded allegations regarding their hours and pay (*see* Dkts. 91-1 – 91-6),
although the Court need not rely on those Affidavits, in light of Defendants' default.

Plaintiffs' proposed damages calculations where necessary to reflect these differing limitations periods.

As for their claims under the NYLL, Plaintiffs are entitled to a six year statute of limitations period.  Relation back of these claims under Rule 15(c) is appropriate here, because the NYLL claims of the opt-in plaintiffs are nearly identical to those asserted by the plaintiffs named in the original Complaint, and because that pleading apprised Defendants that relief was sought "individually and on behalf of others similarly situated."  (*See* Compl. ¶¶ 14-15; *Charvac*, 2015 WL 5475531, at *4; *Lopez*, 2015 WL 136336, at *2-3.)  This Court therefore finds that Plaintiffs' NYLL claims should be calculated from January 22, 2007, six years before the Complaint was filed.[6]

### 1.        Claims by All Plaintiffs Against Defendant Orfaly

Each of the Plaintiffs claim to have been primarily "stationed" at one of the Pita Grill locations that has already settled claims in this action, and each also alleges to have been "sent by his manager to the other Pita Grill locations around the city to drop off and pick up a variety of supplies, such as falafel mix and salads."  (Proposed Findings ¶¶ 6, 9, 11, 13, 15, 17, 19; *see also* 3d Am. Compl. ¶¶ 50, 68, 85, 104, 124, 142.)  As noted above, Plaintiffs each seek to recover damages under both the FLSA and NYLL against defaulting defendant Orfaly on the ground that, as set out above, Orfaly was "involved in the operation and management of all [Pita Grill] locations" (Proposed Findings ¶ 3; 3d Am. Compl. ¶¶ 4, 32.)

---

[6] Although defendants PG Chelsea and PG Hoboken were not named in the original pleading, this fact is immaterial to any calculation of damages on plaintiff Rodriguez's separate claims against these two defendants, as the time periods during which Rodriguez worked for these two defendants would fall within the coverage of the applicable statutes, regardless of whether the limitations period were calculated based on filing date of the original Complaint or the Third Amended Complaint.  (*See* Discussion, i*nfra*, at Section I(B)(2).)

As Plaintiffs' allegations regarding Orfaly's involvement in the chain of restaurants are sufficient, on this inquest, to allow for an award against him on each of the Plaintiffs' claims, this Court proceeds to examine the totality of the hours worked and damages claimed by each Plaintiff, so as to calculate appropriate damages awards, for each of them, as against Orfaly.

### a.  Plaintiff Rodriguez

Plaintiff Rodriguez alleges to have worked at various Pita Grill locations from February 2008 through, at least, July 12, 2013, the date that Plaintiffs filed the Third Amended Complaint. (3d Am. Compl. ¶ 48.)  Rodriguez asserts that, throughout his employment with Defendants, his wages were paid by a combination of check and cash.  (*Id.* ¶ 59.)  Rodriguez further contends that, in 2012, Defendants failed to provide him with an annual wage notification or weekly wage statements.  (*Id.* ¶¶ 63-66.)

### i.  February 2008 Through April 2009

Rodriguez first asserts that he worked as a delivery worker at Pita Grill Chelsea from approximately February 2008 through April 2009 (a period he estimates as 65 weeks), during which time he typically worked from 10:00 a.m. to 12:00 a.m., seven days per week, for a total of 98 hours per week.  (*Id.* ¶ 55; *see also* Proposed Findings, Ex. G (Damages Chart for Defendant Orfaly).)

Rodriguez claims that he was paid $5.00 per hour during this period (3d Am. Compl. ¶ 60), resulting in underpayment by $418.05 per week for the 65 weeks, calculated based on the then-applicable minimum wage of $7.15 per hour for the first 40 hours of each week, and $10.73 per hour in overtime for the 58 additional hours (Proposed Findings ¶¶ 6-7, 56, Ex. G). Rodriguez thus claims that he is entitled to an award of $27,173.25, for unpaid minimum wages and overtime pay attributable to this period (calculated as $418.05/week x 65 weeks).  Rodriguez

further contends that, during this time period, he worked more than 10 hours per day, seven days per week, and is therefore entitled to spread-of-hours damages in the amount of $3,253.25 (representing one hour of pay at the minimum wage of $7.15 x 455 days).  (*Id.* ¶ 57, Ex. G.)

### ii.      December 2010 Through May 2011

Rodriguez additionally claims that, from approximately December 2010 through May 2011 (a period he estimates as 25 weeks), he was employed at Pita Grill 57th Street, where he worked as a cook from 9:00 a.m. to 5:00 p.m. on Wednesdays through Mondays, and then worked as a delivery worker from 5:00 p.m. through 12:00 a.m. those same days, for a total of approximately 90 hours per week.  (3d Am. Compl. ¶ 56.)

Rodriguez contends that he was effectively paid $7.13 per hour for all hours worked during this period (Proposed Findings ¶ 7), such that he was underpaid by $191.75 per week for the 25 weeks, based on the applicable minimum wage of $7.25 per hour for the first 40 hours of each week, and overtime rate of $10.88 per hour for the additional 50 hours.  (*Id.* ¶ 58, Ex. G.) Rodriguez thus contends that he is entitled to an award of $4,793.75 for unpaid minimum wages and overtime pay attributable to this period (calculated as $191.75/week x 25 weeks).

Rodriguez also claims that he worked more than 10 hours per day for six days per week during this time period, and is therefore entitled to spread-of-hours damages, for the period, in the amount of $1,087.50 (representing one hour of pay at the minimum wage of $7.25 x 150 days).  (*Id.* ¶ 59, Ex. G.)

### iii.      February 2012 Through July 2012

Rodriguez further asserts that, from February 2012 through July 2012 (a period he estimates as 26 weeks), he was employed at Pita Grill Third Avenue, where he worked as a delivery worker on Wednesdays through Mondays from 11:00 a.m. to 3:00 p.m., and on

Sundays, Wednesdays, and Fridays from 6:00 p.m. to 12:00 a.m., for a total of approximately 42 hours per week.  (3d Am. Compl. ¶ 57.)

Rodriguez contends that he was effectively paid $6.71 per hour for his work during this period (Proposed Findings ¶ 7, Ex. G), such that he was underpaid by $29.75 per week for the 26 weeks, based on the applicable minimum wage of $7.25 per hour for the first 40 hours, and overtime rate of $10.88 per hour for the additional two hours (*id.* ¶ 60, Ex. G).  Rodriguez thus contends that he is entitled to an award of $773.50 for unpaid minimum wage and overtime pay attributable to this period (calculated as $29.75/week x 26 weeks).  (*Id.*)  Rodriguez also contends that, for each week during this time period, he worked one day of more than 10 hours, and that he is therefore entitled to spread-of-hours damages, for the period, in the amount of $188.50 (representing one hour of pay at the minimum wage of $7.25 x 26 days).  (*Id.* ¶ 61, Ex. G.)

Rodriguez further contends that, during this period, Defendants failed to provide him with an annual wage notification or weekly wage statements, and that he is therefore entitled to additional damages, pursuant to the NYLL, for these notice violations.  In this regard, Rodriguez proposes that he be awarded $1,300 for the failure to provide an annual wage notification (calculated as $50 x 26 weeks), and $2,600 for the failure to provide weekly wage statements (calculated $100 x 26 weeks).  (*Id.* ¶ 62, Ex. G.)  As discussed above, however (*see supra* at Section I(A)(6)), the WTPA placed a cap of $2,500 on damages for the failure to provide weekly wage statements, where such damages were incurred prior to February 27, 2015, *see* 2010 N.Y. Laws ch. 564 § 7, *amending* N.Y. Labor Law § 198(1-d).  Thus, while Rodriguez has reasonably shown that he is entitled to $1,300 for the annual notice violation, his damages for the demonstrated weekly notice violation should be capped at $2,500 (instead of the $2,600

claimed).  Accordingly, this Court recommends that Rodriguez be awarded a total of $3,800 (i.e.,

$1,300 plus $2,500) as damages for wage notice violations.

### iv.    **August 2012 to Date of Third Amended Complaint**

Rodriguez also claims that, from approximately August 2012 through the date the Third

Amended Complaint was filed (a period he estimates as 49 weeks), he worked at Pita Grill

Hoboken.  (3d Am. Compl. ¶ 58; Proposed Findings ¶ 7, Ex. G.)  During this time period, he

alleges that he worked from Mondays through Thursdays from 5:00 p.m. to 12:30 p.m. as a

delivery worker, and on Saturdays and Sundays from 11:00 a.m. to 4:00 p.m. as a cook, typically

working a total of 40 hours per week.  (3d Am. Compl. ¶ 58; Proposed Findings ¶ 7.)

Rodriguez claims that he was paid $6.00 per hour during this period (Proposed Findings

¶ 63), such that he was underpaid by $50.00 per week for the 40 weeks, based on the applicable

minimum wage of $7.25 per hour for the 40 hours he worked (*id.*, Ex. G).  He claims that, for

this period, he is entitled to an award of $2,450.00 for unpaid minimum wages attributed to this

period (calculated as $50/week x 49 weeks). (*Id.*)

* * *

In total, Rodriguez has reasonably demonstrated that he is entitled to damages in the

amount of $43,519.75 from defendant Orfaly for minimum-wage, overtime, spread-of-hours, and

wage-notice violations.

### b.  **Plaintiff Lliguin**

Lliguin claims that he was employed by Defendants from approximately May 2009

through September 2012, during which time he was primarily stationed at Pita Grill Third

Avenue.  (3d Am. Compl. ¶ 67; *see also* Declaration of Luis Lliguin, dated September 13, 2013

("Lliguin Decl.") ¶ 6 (Dkt. 91-1).)  According to Lliguin, he was paid by a combination of check

20

and cash.  (3d Am. Compl. ¶ 76.)  Specifically, he received a check to compensate him for the first 40 hours of work he performed each week, and received cash compensation for any hours worked over 40 hours each week.  (*Id.* ¶ 78.)  Lliguin contends that Defendants did not provide him with an annual wage notification or weekly wage statements in 2012.  (*Id*. ¶ 81-83; Proposed Findings ¶ 70.)

### i.     <u>May 2009 Through May 2010</u>

Lliguin contends that, from approximately May 2009 through May 2010 (a period he estimates as 56 weeks), he typically worked on Sundays through Fridays from 6:00 p.m. until 12:30 a.m., for a total of approximately 39 hours per week.  (3d Am. Compl. ¶ 74; *see also* Lliguin Decl. ¶¶ 11-12.)  Lliguin claims that he was paid $5.00 per hour during this period. (3d Am. Compl. ¶ 77.)

From May 1, 2009 until July 23, 2009 (a period of 12 weeks), the applicable minimum wage was $7.15 per hour for the first 40 hours worked each week.  Based on that rate, Lliguin was underpaid by $83.85 per week for the 12 week-period.  (Proposed Findings ¶ 67, Ex. G.) Lliguin thus claims that he is entitled to an award of $1,006.20 for unpaid minimum wages attributable to this period (calculated as $83.85/week x 12 weeks).

From July 24, 2009 through May 31, 2010 (a period of 44 weeks), following an increase in the New York minimum wage, Lliguin was underpaid by $87.75 per week for the 44 weeks, calculated based on the then-applicable minimum wage of $7.25 per hour for the first 40 hours of each week.  (*Id.*)  Lliguin thus claims that he is entitled to an award of $3861.00 for unpaid minimum wages attributable to this period (calculated as $87.75/week x 44 weeks).  (*Id*.)

<b>ii.</b>   <b><u>June 2010 Through September 2012</u></b>

Lliguin further asserts that, from June 1, 2010 to September 30, 2012 (a period he estimates as 121 weeks), he worked from 9:00 a.m. until 3:00 p.m., and again from 6:00 p.m. until 10:00 p.m., Thursdays through Tuesdays, for a total of approximately 60 hours per week. (3d Am. Compl. ¶ 75; *see also* Lliguin Decl. ¶¶ 11-12.)  Lliguin claims that he was underpaid by $207.50 per week for the 121 weeks, based on the applicable minimum wage of $7.25 per hour for the first 40 hours worked each week, and overtime rate of $10.88 per hour for the additional 20 hours.  (Proposed Findings ¶ 68, Ex. G).  Lliguin thus contends that he is entitled to an award of $9,130.00 for unpaid minimum wages and overtime pay attributable to this period (calculated at $207.50/week x 25 weeks).  (*Id*.)

Lliguin further contends that, during this time period, he worked more than 10 hours per day for six days per week, and is therefore owed spread-of-hours damages in the amount of $5,263.50 (representing one hour of pay at the minimum wage of $7.25 x 726 days).  (*Id*. ¶ 69, Ex. G.)

In addition, Lliguin contends that Defendants did not provide him with an annual wage notification or weekly wage statements in 2012, and suggests that he is therefore entitled to damages of $1,950 ($50 x 39 weeks) for the failure to provide with an annual wage notification, and $3,900 ($100 x 39 weeks) for the failure to provide him with weekly wage statements, pursuant to the NYLL.  (*Id*. ¶ 70, Ex. G.)  For the reasons discussed above, however (*see supra*, at Section I(A)(6)), the $2,500 damages cap that was in effect under the WTPA for the relevant time, *see* 2010 N.Y. Laws ch. 564 § 7, *amending* N.Y. Labor Law § 198(1-d), necessarily limits the damages that Lliguin may recover for the weekly notice violations.  Thus, this Court

22

recommends that Lliguin only be awarded a total of $4,450 ($1,950 plus $2,500) as damages for wage notice violations.

* * *

In total, Lliguin has reasonably demonstrated that he is entitled to damages in the amount of $39,688.20 from defendant Orfaly for minimum-wage, overtime, spread-of-hours, and wage-notice violations.  (*Id.*, Ex. G.)

### c.  **Plaintiff Gomez**

Gomez contends that he was employed by Defendants at the Pita Grill 57th Street location from approximately March 2012 through August 2012.  (3d Am. Compl. ¶ 84; *see also* Declaration of Mario Gomez, dated Nov. 13, 2013 ("Gomez Decl.") ¶ 6 (Dkt. 91-2).)  Gomez asserts his wages were always paid by check.  (3d Am. Compl. ¶ 94; Gomez Decl. ¶ 13.)  Gomez further alleges that Defendants did not provide him with an annual wage notification or weekly wage statements in 2012.  (3d Am. Compl. ¶¶ 98-100.)

### i.  **March 2012 to April 15, 2012**

Gomez alleges that, from approximately March 2012 until mid-April 2012 (a period he estimates as six weeks), he typically worked from 5:00 p.m. until 12:30 a.m. or, more "frequently," 1:00 a.m., five days per week, for a total that he estimates (apparently using the 1:00 a.m. end-time consistently, for this purpose) as 40 hours per week.  (3d Am. Compl. ¶ 92; Gomez Decl. ¶ 11.)

Gomez contends that he was paid $5.00 per hour during this period (3d Am. Compl. ¶ 94), which means that, based on the applicable minimum wage of $7.25 per hour, he was underpaid by $2.25 per hour, or – for 40 hours per week, for six weeks – a total of $540.00 ($2.25 x 40 x 6).  Plaintiffs' proposed damages calculations, however, do not reflect this total,

but rather lesser unpaid wages for Gomez, during this period, of $300.00.  (*See* Proposed Findings ¶ 75, Ex. G.)  Although this may represent a mathematical error by Plaintiffs, this Court cannot be certain of the cause of the discrepancy.  In the end, as Gomez has only requested $300.00 in unpaid minimum wages for this period, and as his submitted proofs would support damages of at least that amount, this Court recommends that he be awarded the amount requested.

### ii.        April 16, 2012 Through August 2012

Gomez claims that from April 16, 2012 until August 31, 2012 (a period he estimates as 20 weeks), he typically worked from 12:00 p.m. until 12:30 a.m. four days per week, and worked from 10:00 a.m. until 5:00 p.m. one day per week, for a total of approximately 57 hours per week.  (3d Am. Compl. ¶ 93; Gomez Decl. ¶ 12.)

Gomez contends that he was paid $5.00 per hour during this time period, such that he was underpaid by $234.88 per week for the 20 weeks, based on the applicable minimum wage of $7.25 per hour for the first 40 hours of each week, and overtime rate of $10.88 per hour for the additional 17 hours.  (Proposed Findings ¶ 76, Ex. G.)  Gomez thus contends that he is entitled to an award of $4,697.50 for unpaid minimum wages and overtime pay attributable to this period (calculated as $234.88/week for 20 weeks).  (*Id.*)  Gomez also contends that he worked more than 10 hours per day for four days per week during this time period, and is therefore entitled to spread-of-hours pay in the amount of $580.00 (representing one hour of pay at the minimum wage of $7.25 x 80 days).  (*Id.*)

Gomez further alleges that Defendants did not provide him with an annual wage notification or weekly wage statements in 2012, and contends that he is entitled to damages pursuant to the NYLL in the amount of $1,300 ($50 x 26 weeks) for the failure to provide him

with an annual wage notification, and $2,600 ($100 x 26 weeks) for the failure to provide him

with weekly wage statements.  (*Id.* ¶ 77, Ex. G.)  As discussed above, though (*see supra*, at

Section I(A)(6)), any damages for the weekly notice violations must be capped at $2,500, *see*

2010 N.Y. Laws ch. 564 § 7, *amending* N.Y. Labor Law § 198(1-d), and, therefore, this Court

recommends that Gomez be awarded only $3,800 ($1,300 plus $2,500) as damages for wage

notice violations.

* * *

In total, Gomez has reasonably demonstrated that he is entitled to damages in the amount

of $9,377.50 from defendant Orfaly for minimum-wage, overtime, spread-of-hours, and wage-

notice violations.

### d.  **Plaintiff Manuel Angamarca**

Manuel Angamarca alleges that he was employed by Defendants from May 2007 until

August 2011, and worked primarily at the Pita Grill Seventh Avenue and Pita Grill First Avenue

locations.  (3d Am. Compl. ¶ 102; *see also* Declaration of Manuel Angamarca, dated Sept. 12,

2013 ("M. Angamarca Decl.") ¶ 6 (Dkt. 91-3).)  He alleges that, prior to April 2009, his wages

were paid in cash, and that after April 2009 he was paid by check. (3d Am. Compl. ¶ 113;

M. Angamarca Decl. ¶ 13.)

### i.  **May 2007 Through March 2009**

Manuel Angamarca contends that he worked at Pita Grill Seventh Avenue from May 1,

2007 until March 31, 2009 (a period he estimates as 100 weeks), during which time he typically

worked from 10:00 a.m. to 12:00 a.m. on Sundays through Fridays, for a total of approximately

84 hours per week.  (3d Am. Compl. ¶ 111; Proposed Findings ¶ 79.)

He claims to have been paid $4.60 per hour during this time period, such that he was underpaid by $371.50 per week, based on the minimum wage of $7.15 per hour for the first 40 hours of each week, and the overtime rate of $10.73 per hour for the additional 44 hours. (Proposed Findings ¶ 79, Ex. G.)  He therefore contends that he is entitled to an award of $37,150.00 for unpaid minimum and overtime wages attributable to this time period (calculated as $371.50/week x 100 weeks).  (*Id.*)

He further contends that, during this time period, he worked more than 10 hours per day, six days per week, and is therefore entitled to spread-of-hours damages in the amount of $4,290.00 (representing one hour of pay at the minimum wage of $7.15 x 600 days).  (*Id.*)

### ii.     April 2009 Through August 2011

Manuel Angamarca also claims that he worked at Pita Grill First Avenue from April 1, 2009 through August 31, 2011.  (3d Am. Compl. ¶ 112.)  He alleges that his schedule was the same at the First Avenue location as it was at the Seventh Avenue location – specifically, that he worked from 10:00 a.m. to 12:00 a.m. on Sundays through Fridays, working a total of approximately 84 hours per week.  (*Id.*)

### a.     April 1, 2009 Through July 23, 2009

Manuel Angamarca alleges that from April 1, 2009 through July 23, 2009 (a period he estimates as 16 weeks), he was paid $4.60 per hour, such that he was underpaid by $371.50 per week, based on the applicable minimum wage of $7.15 per hour for the first 40 hours worked, and overtime rate of $10.73 per hour for the additional 44 hours.  (Proposed Findings ¶ 80, Ex. G.)  He thus contends that he is entitled to an award of $5,944.00 in unpaid minimum and overtime wages attributable to this time period (calculated as $371.50/week x 16 weeks). (*Id.*)

26

He further claims that, during this 16-week time period, he worked more than 10 hours per day, six days per week, and is therefore entitled to spread-of-hours damages in the amount of $686.40 (representing one hour of pay at the minimum wage of $7.15 x 96 days).  (*Id.* ¶ 83, Ex. G.)

### b. July 24, 2009 Through November 30, 2010

Following an increase in the New York minimum wage, Manuel Angamarca claims that, from July 24, 2009 through November 30, 2010 (a period he estimates as 71 weeks), he was underpaid by $382.10 per week, based his salary of $4.60 per hour, compared with the applicable minimum wage of $7.25 per hour for the first 40 hours he worked per week, and the overtime rate of $10.88 per hour for the additional 44 hours.  (*Id*. ¶ 81, Ex. G.)  Based on those rates, he contends that he is entitled to an award of $27,129.10 in unpaid minimum and overtime wages attributable to this time period (calculated as $382.10/week x 71 weeks).  (*Id*.)

He further contends that, during this time period, he worked more than 10 hours per day, six days per week, and is therefore entitled to spread-of-hours damages in the amount of $3088.50 (representing one hour of pay at the minimum wage of $7.25 x 426 days).  (*Id.*  ¶ 83, Ex. G.)

### c. December 1, 2010 to August 31, 2011

Manuel Angamarca further alleges that from December 1, 2010 to August 31, 2011 (a period he estimates as 39 weeks), he was paid $5.00 per hour (Proposed Findings ¶ 82, Ex. G), such that he was underpaid by $348.50 per week for the 39 weeks, based on a minimum wage of $7.25 per hour for the first 40 hours worked, and overtime rate of $10.88 per hour for the additional 44 hours (*id*. ¶ 82, Ex. G).   He thus contends that he is entitled to an award of

27

$13,591.5 in unpaid minimum wage and overtime pay attributable to this time period (calculated as $348.50/week x 39 weeks).  (*Id*.)

Manuel Angamarca also claims that, during this time period, he worked more than 10 hours per day, six days per week.  (*Id*. ¶ 83, Ex. G.)  Thus, he claims to be entitled to spread-of-hours pay of $1,696.50 (representing one hour of pay at the minimum wage of $7.25 x 234 days). (*Id*.)

* * *

In total, Manuel Angamarca has reasonably demonstrated that he is entitled to damages in the amount of $93,576.20 from defendant Orfaly for minimum-wage, overtime and spread-of-hours damages.

### e.  Plaintiff Livio Angamarca

Livio Angamarca claims that he was employed by Defendants from July 2008 until November 2010, and then again from May 2011 until August 20, 2011.  (3d Am. Compl. ¶ 122; *see also* Declaration of Livio Angamarca, dated Sept. 12, 2013 ("L. Angamarca Decl.") ¶ 6 (Dkt. 91-4).)  He claims that, from approximately July 2008 through November 2010, he was paid by check, and that from approximately May 2011 until August 20, 2011, he was paid in cash.  (3d Am. Compl. ¶ 132; L. Angamarca Decl. ¶¶ 13-15.)

### i.  July 2008 Through November 2010

Livio Angamarca claims that, from July 2008 until November 2010, he worked at Pita Grill 57th Street, where he typically worked Saturdays through Thursdays, from either 9:00 a.m. to 10:00 p.m. or from 10:00 a.m. to 12:00 a.m., for a total of 84 hours per week.  (3d Am. Compl. ¶ 130).  He claims that he was paid $4.60 per hour during this time period.  (*Id*. ¶ 133.)

28

### a.      July 1, 2008 Through July 23, 2009

From July 1, 2008 through July 23, 2009 (a period he estimates as 55 weeks), Livio Angamarca was allegedly underpaid by $371.50 per week, based on the applicable minimum wage of $7.15 per hour for the first 40 hours of each week, and overtime rate of $10.73 per hour for the additional 44 hours. (Proposed Findings ¶ 86, Ex. G.)  He thus contends that he is entitled to an award of $20,432.50 in unpaid minimum wage and overtime pay attributable to this time period ($371.50/week x 55 weeks).  (*Id.* ¶ 86, Ex. G.)

He also claims that, during this 71-week period, he worked more than 10 hours per day for six days per week, and therefore is entitled to spread-of-hours damages in the amount of $2,359.50 (representing one hour of pay at the minimum wage of $7.15 x 330 days).  (*Id.*)

### b.      July 24, 2009 Through November 30, 2010

Livio Angamarca further claims that, from July 24, 2009 through November 30, 2010 (a period he calculates as 71 weeks), following an increase in New York minimum wage, he was underpaid by $382.10 per week, based on the applicable minimum wage of $7.25 per hour for the first 40 hours worked each week, and overtime rate of $10.88 per hour for the additional 44 hours.  (*Id.* ¶ 87, Ex. G.)  He thus contends that, for this time period, he is entitled to an award of $27,129.10 for unpaid minimum wage and overtime pay (calculated as $382.10/week x 71 weeks).  (*Id.* ¶¶ 87-88, Ex. G.)

Additionally, he claims that, during this time period, he worked more than 10 hours per day for six days per week, and therefore is entitled to spread-of-hours damages in the amount of $3,088.50 (representing one hour of pay at the minimum wage of $7.25 x 426 days).  (*Id.*)

### ii.      May 2011 Until August 20, 2011

Livio Angamarca additionally claims that, from May 1, 2011 until August 20, 2011 (a period he estimates as 16 weeks), he worked at Pita Grill First Avenue, where he typically worked on Saturdays and Sundays from 11:00 a.m. to 10:00 p.m., and on Mondays, Tuesdays, Thursdays and Fridays from 5:00 p.m. to 12:00 a.m., for a total of approximately 50 hours per week.  (3d Am. Compl. ¶ 112; L. Angamarca Decl. ¶ 12.)  He claims that he was paid $5.00 per hour during this time period, such that he was underpaid by $148.75 per week, based on the applicable minimum wage of $7.25 per hour for the first 40 hours worked each week, and overtime rate of $10.88 per hour for the additional 10 hours.  (Proposed Findings ¶ 89, Ex. G.) He thus claims that he is entitled to $2,380.00 in unpaid minimum wage and overtime pay attributable to this period this period (calculated as $148.75/week x 16 weeks).  (*Id.*)

Additionally, he claims that from May 1, 2011 through August 20, 2011 he worked more than 10 hours per day for two days per week, and therefore is entitled to $232.00 in spread-of-hours pay (representing one hour of pay at the minimum wage of $7.25 per hour for 32 days). (*Id.* ¶ 90, Ex. G.)

* * *

In total, Livio Angamarca has reasonably demonstrated that he is entitled to damages in the amount of $55,621.60 from defendant Orfaly for minimum-wage, overtime and spread-of-hours damages.

### f.   Plaintiff Marte

Marte claims that he was employed by Defendants from April 2010 through May 2011 (a period he estimates as 60 weeks), primarily at Pita Grill First Avenue.  (3d Am. Compl. ¶ 141; *see also* Declaration of Antonio Marte, dated Sept. 12, 2013 ("Marte Decl.") ¶ 6 (Dkt. 91-5).)

He alleges that he typically worked Monday through Thursday, from 4:00 p.m. to 12:00 a.m., and Saturday and Sunday from 12 a.m. to 12 p.m., for a total of approximately 64 hours per week.  (3d Am. Compl. ¶ 148; Marte Decl. ¶ 11.)  He claims that he was paid by a combination of check and cash.  (Marte Decl. ¶ 12.)  Specifically, he alleges that he was paid by check for the first 40 hours that he worked each week, and cash for the hours he worked in excess of 40 each week.  (*Id.*)

Marte alleges that he was paid $4.65 per hour, such that he was underpaid by $253.40 per week, based on the applicable minimum wage of $7.25 per hour for the first 40 hours worked each week, and overtime rate of $10.88 per hour for the additional 24 hours.  (Proposed Findings ¶ 93; Ex. G.)  Marte contends that he is entitled to an award of $15,204 for unpaid minimum wage and overtime pay attributable to this period (calculated as $253.40/week x 60 weeks).  (*Id.*)

Marte additionally claims that he worked in excess of 10 hours a day for two days per week during this period, and is owed $870.00 in spread-of-hours pay (representing one hour of pay at the minimum wage of $7.25 per hour x 120 days).  (*Id.* ¶ 94, Ex. G.)

* * *

In total, Marte has reasonably demonstrated that he is entitled to damages in the amount of $16,074.00 from defendant Orfaly for minimum-wage, overtime and spread-of-hours damages.[7]

---

[7] According to the Orfaly Damages Chart, Marte claims damages in the amount of $36,962.15 for Defendants' failure to provide an annual wage notice.  (Proposed Findings, Ex. G.)  This amount is not explained within the Proposed Findings, however, nor is it included in the "Total" categories on the chart.  (*Id.*)  Moreover, the amount is equivalent to the entire amount that Marte claims that he is owed, inclusive of liquidated damages and prejudgment interest.  (*Id.*)  Thus, this Court presumes that the amount was erroneously entered into the "Annual Wage Notice" column of the Chart, and recommends that Marte not be awarded any damages for wage notice violations.

g. **Plaintiff Tenango**

Tenango claims that he was employed by Defendants from February 2012 through September 2012 (a period he estimates as 39 weeks), and that he worked at various Pita Grill locations, including Pita Grill Third Avenue, Pita Grill 57th Street, Pita Grill Chelsea, and Pita Grill First Avenue.[8]  (3d Am. Compl. ¶ 155; *see also* Declaration of Oscar Tenango, dated Sept. 12, 2013 ("Tenango Decl.") (Dkt. 91-6).)  He claims that, during his employment, he typically worked from 4:00 p.m. to 12:00 p.m., Monday through Saturday, for a total of 48 hours per week.  (3d Am. Compl. ¶ 162; Tenango Decl. ¶ 11.)

Tenango claims that he was paid $5.00 per hour during the course of his employment, such that he was underpaid by $137.00 per week, based on the applicable minimum wage of $7.25 per hour for the first 40 hours worked each week, and overtime rate of $10.88 per hour for the additional eight hours.  (Proposed Findings ¶ 72; 3d Am. Compl. ¶ 16.)  He thus contends that he is entitled to damages in the amount of $5,343.00 in unpaid minimum wage and overtime pay attributable to this period (calculated as $137.00/week x 39 weeks).  (*Id*. ¶ 72, Ex. G.)

Tenango further claims that he is entitled to damages of $1,950 ($50 x 39 weeks) under the NYLL for Defendants' failure to provide him with an annual wage notification in 2012, and $3,900 ($100 x 39 weeks) for failure to provide weekly wage statements in 2012.  (*Id*. ¶ 73.)  For the reasons discussed above, however (*see supra*, at Section I(A)(6)), the $2,500 damages cap that was in effect under the WTPA for the relevant time, *see* 2010 N.Y. Laws ch. 564 § 7, *amending* N.Y. Labor Law § 198(1-d), limits the damages that Tenango may recover for the

---

[8] Even though Tenango alleges that he worked at Pita Grill Chelsea, he does not seek damages from defendant PG Chelsea.

weekly notice violations.  Thus, this Court recommends that Tenango only be awarded a total of $4,450 ($1,950 plus $2,500) as damages for wage notice violations.

* * *

In total, Tenango has reasonably demonstrated that he is entitled to damages in the amount of $9,793.00 from defendant Orfaly for minimum-wage and overtime damages.  (*Id.* ¶ 74.)

## 2.   Additional Claims by Plaintiff Rodriguez<br>Against Defendants PG Chelsea and PG Hoboken

As set out above, Rodriguez seeks to recover all of his claimed damages from defendant Orfaly.  Rodriguez, however, also seeks judgment against defendants PG Chelsea and PG Hoboken (in each case, jointly and severally with Orfaly) for those portions of his damages attributable to the time he worked at the establishments (Pita Grill Chelsea and Pita Grill Hoboken) operated by these two additional defendants.  (*See* Proposed Findings ¶¶ 39, 41, 65, 66.)  Rodriguez has alleged that each named defendant "possessed substantial control over the Plaintiffs' . . . working conditions, and over the policies and practices with respect to the employment and compensation of the Plaintiffs . . . " (3d Am. Compl. ¶ 39), and, further, that each defendant "had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services."  (*Id.* ¶ 43.)  Based on these allegations, Rodriguez has sufficiently pleaded that PG Chelsea and PG Hoboken were "employers" within the meaning of the FLSA and NYLL, such that they are subject to liability in this action.  (*See* Section I(A)(7), *supra*.)

Specifically, Rodriguez claims that PG Chelsea should be held jointly and severally liable with Orfaly for damages in the amount of $30,426.50, representing the $27,173.25 in unpaid minimum wages and overtime pay and $3,253.35 in spread-of-hours damages that Rodriguez has

reasonably demonstrated he is owed for the time he worked at Pita Grill Chelsea, from February 2008 through April 2009.  (*See* Section I(B)(1)(a)(i), *supra*; *see also* Proposed Findings, Ex. H (PG Chelsea Damages Chart)).

Rodriguez additionally claims that PG Hoboken should be held jointly and severally liable with Orfaly for damages in the amount of $2,450.00, representing the amount of unpaid minimum wages that Rodriguez has reasonably demonstrated he is owed for the time he worked at Pita Grill Hoboken, from August 2012 through the date of filing of the Third Amended Complaint.  (*See* Section I(B)(1)(a)(iv), *supra*; *see also* Proposed Findings, Ex. J (PG Hoboken Damages Chart).)

This Court agrees that Rodriguez is entitled to the additional judgments he seeks, for these amounts.

## II.     LIQUIDATED DAMAGES AND PREJUDGMENT INTEREST

### A.     Applicable Legal Standards

#### 1.     Liquidated Damages Pursuant to the FLSA and NYLL

In addition to recovery for unpaid minimum wages and overtime compensation, the FLSA provides for the recovery of liquidated damages.  *See* 29 U.S.C. § 216(b).  Under the statute, a plaintiff is entitled to recover liquidated damages in an amount equal to the amount of unpaid wages and overtime compensation that the plaintiff was improperly denied, unless the employer demonstrates that it acted in good faith and had a reasonable basis for believing that it had not violated the FLSA.  *See id.* (providing that plaintiff-employees who prevail under either Section 206 or 207 of the FLSA are entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and . . . an additional equal amount as liquidated damages"); *see also* 29 U.S.C. § 260 (mandating that an employer pay

liquidated damages unless the employer demonstrates that he was acting in "good faith" and "had reasonable grounds for believing" that he was not acting in violation of the FLSA); *see also Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014) (adopting report and recommendation).

"As the Second Circuit has observed, 'the employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness. . . . The burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the norm, single damages the exception.'" *See Galeana*, 120 F. Supp. 3d at 317 (quoting *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (other internal quotation marks and citations omitted)); *Cao*, 2010 WL 4159391, at *5; *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008); *see also* 29 U.S.C. § 260.

The NYLL also provides for the recovery of liquidated damages, *see* N.Y. Lab. Law § 198(1-a), but courts within this Circuit have been split on the question of whether a plaintiff may recover liquidated damages under both the FLSA and the NYLL, particularly following the 2009 and 2011 passage of two amendments to the NYLL, discussed below, that align its language more closely to that of the FLSA. *See Chen v. Yuen*, No. 04cv06579 (GBD) (KNF), 2015 WL 7758532, at *4 (S.D.N.Y. Dec. 1, 2015) (noting that "[t]here is no appellate authority as to whether a plaintiff may recover cumulative (sometimes called 'simultaneous' or 'stacked') liquidated damages under the FLSA and NYLL," and describing the district courts in the Circuit as being "deeply divided" on this issue (alteration in original; internal quotation marks and citations omitted)); *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14cv10234 (JGK) (JLC), 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) (report and recommendation) (describing amendments to the NYLL).

Earlier this year, this Court came down on the side of allowing simultaneous recovery under the two statutes for time periods after the recent amendments to the NYLL, *see, e.g.*, *Kernes v. Global Structures, LLC*, No. 15cv00659 (CM)(DF), 2016 WL 880199, at *9 (S.D.N.Y. Mar. 1, 2016) (recommending award of stacked liquidated damages), adopted by Order dated Mar. 1, 2016 (Mem. Endors.) (Dkt. 27 in 15cv00659), but, upon review of the continually evolving precedent on this point, and after further consideration, this Court has become persuaded that its earlier view is less well supported by statutory intent than the contrary view now being expressed in the majority of decisions issued in this District.

Specifically, this Court earlier concluded that, as liquidated damages under the FLSA were intended to be "compensatory," while such damages under the NYLL were (to this Court's understanding) intended to be "punitive," the damages could not be considered duplicative, rendering both available. *See id.* Indeed, several courts had noted this supposed difference in purpose of liquidated damages under the FLSA and the NYLL, *see id.*, at *5 (collecting cases); *see also, e.g.*, *Cao*, 2010 WL 4159391, at *5 (concluding that liquidated damages under the FLSA and the NYLL are supposed to "serve fundamentally different purposes"), and some courts within this District continue to award liquidated damages under both statutes, for post-2011 wage-and-hour violations, in adherence with this view, *see, e.g.*, *Rana v. Islam*, No. 14cv1993 (SHS), 2016 WL 5390941, at *4 (S.D.N.Y. Sept. 26, 2016) (finding cumulative liquidated damages to be "appropriate," as FLSA liquidated damages "are considered compensatory," while "liquidated damages under the NYLL are punitive" (internal quotation marks and citation omitted)); *Rodriguez v. Globe Inst. of Tech.*, No. 15cv1435 (RA) (SN), 2016 WL 5795127, at *4 (S.D.N.Y. Aug. 10, 2016) (awarding liquidated damages under both statutes,

36

as each "serves a different purpose – the FLSA to compensate and NYLL to punish"), *report and recommendation adopted*, 2016 WL 5818573 (Oct. 4, 2016).

Other decisions, though, have pointed out what this Court had overlooked – that two amendments to the NYLL have largely undermined the previously well-accepted notion that liquidated damages under the NYLL were to be considered punitive.  First, and most importantly, an amendment to the NYLL, effective November 24, 2009, eliminated the requirement that a plaintiff prove that the employer's NYLL violations were "willful," in order to obtain liquidated damages.  *See McLean v. Garage Mgmt. Corp.*, No. 09cv9325 (DLC), 2012 WL 1358739, at *8 (S.D.N.Y. Apr. 19, 2012) (discussing this former provision of the NYLL). In this regard, the NYLL was amended to align more closely with the FLSA, in that the reference to "willfulness" was eliminated, and replaced by a provision allowing "for a liquidated damages award 'unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'"  *Id.* (quoting N.Y. Lab. Law § 198(1-a)).  It was based on the *prior* language of the statute that liquidated damages under the NYLL had generally been thought, by the courts, "to 'constitute a penalty to deter an employer's *willful* withholding of wages due.'"  *Morales v. Mw Bronx, Inc.*, No. 15cv6296 (TPG), 2016 WL 4084159, at *9 (S.D.N.Y. Aug. 1, 2016) (quoting *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)) (other internal quotation marks and citation omitted); *see also Hernandez v. Jrpac Inc.*, 14cv4176 (PAE), 2016 WL 3248493, at *34 (S.D.N.Y. June 9, 2016).  This Court is now persuaded that, as "the willfulness requirement [has been] changed to match the FLSA's good faith requirement," *Tapia v. Blch 3rd Ave. LLC*, No. 14cv8529 (AJN), 2016 WL 4581341, at *7 (S.D.N.Y. Sept. 1, 2016), the premise underlying the "view that NYLL liquidated damages were penalties . . . . is no longer accurate," *Morales*, 2016 WL 4084159, at *9; *see also, e.g.*,

*Hernandez*, 2016 WL 3248493, at \*34; *Hengjin Sun v. China 1221, Inc.*, No. 12cv7135 (RJS), 2016 WL 1587242, at \*4 (S.D.N.Y. Apr. 19, 2016).

Second, an amendment to the NYLL, effective April 9, 2011, increased the amount of available liquidated damages from 25 percent of unpaid minimum, overtime, and spread-of-hours wages to 100 percent. *See Najnin v. Dollar Mountain, Inc.*, No. 14cv5758 (WHP), 2015 WL 6125436, at \*2 (S.D.N.Y. Sept. 25, 2015) (citations omitted); *see also* N.Y. Lab. Law § 663(1). This effectively brought the NYLL still "further in line with the FLSA." *Morales*, 2016 WL 4084159, at \*9; *see also, e.g.*, *Hernandez*, 2016 WL 3248493, at \*34 ("the NYLL provision was modified to track the FLSA's as to the amount of liquidated damages").

As some courts have reasoned, these "recent amendments to the NYLL have undermined the basis for . . . a distinction" between the purposes of "liquidated damages under the FLSA and NYLL," *Santana v. Latino Express Rests., Inc.*, No. 15cv4934 (LTS), 2016 WL 4059250, at \*5 (S.D.N.Y. July 28, 2016) (internal quotation marks and citation omitted); *see also Hernandez*, 2016 WL 3248493, at \*35 (noting that these amendments render elusive "the earlier distinction between the FLSA's compensatory provision and the NYLL's punitive provision"), "spawn[ing] an emerging trend towards denying a cumulative recovery of liquidated damages under the FLSA and NYLL." *Hengjin Sun*, 2016 WL 1587242, at \*4 (internal quotation marks and citation omitted). In fact it appears that the majority view in this District has recently shifted away from the *allowance* of simultaneous liquidated damages, *see, e.g.*, *Ni v. Bat-Yam Food Servs. Inc.*, No. 13cv07274 (ALC) (JCF), 2016 WL 369681, at \*2 (S.D.N.Y. Jan. 27, 2016) (finding, earlier this year, that "allowing recovery under both statutes appears to be the majority approach" (internal quotation marks and citations omitted)); *Pinovi v. FDD Enters., Inc.*, No. 13cv2800 (GBD) (KNF), 2015 WL 4126872, at \*6 (S.D.N.Y. July 8, 2015) (noting, last

38

year, that "[t]he prevailing view remains that recovery under both [the FLSA and the NYLL] is

proper" (citations omitted)); *Bazignan v. Team Castle Hill Corp.,* No. 13cv8382 (PAC), 2015

WL 1000034, at *3 (S.D.N.Y. Mar. 5, 2015) (same), and towards the *disallowance* of a

simultaneous award, *see, e.g.*, *Andrade v. 168 First Ave. Rest. Ltd.*, No. 14cv8268 (JPO) (AJP),

2016 WL 3141567, at *7-8 (S.D.N.Y. June 3, 2016) (report and recommendation, noting that

"[t]he 'prevailing view' now is that double liquidated damages should not be awarded" (citation

omitted)), *report and recommendation adopted*, 2016 WL 3948101 (July 19, 2016); *see also*

*Xochimitl*, 2016 WL 4704917, at *17 (report and recommendation); *Tapia*, 2016 WL 4581341,

at *7; *Morales*, 2016 WL 4084159, at *9-10;  *Hernandez*, 2016 WL 3248493, at *35; *Hengjin*

*Sun*, 2016 WL 1587242, at *4; *Castillo v. RV Transport, Inc.*, No. 15cv0527 (LGS), 2016

WL1417848, at *2-3 (S.D.N.Y. Apr. 11, 2016) (modifying report and recommendation).

   This Court now joins this emerging trend, and concludes that, where the employment

period at issue post-dates November 24, 2009, the date on which the willfulness requirement was

removed from the NYLL, cumulative liquidated damages under both the FLSA and the NYLL

should not be awarded.[9]  *See Hengjin Sun*, 2016 WL 1587242, at *4; *Andrade*, 2016 WL

3141567, at *8.  Rather, the plaintiff should be permitted recovery "under the statute that

provides the greatest relief."  *Castillo*, 2016 WL1417848, at *3 (citation omitted); *see also*

*Morales*, 2016 WL 4084159, at *10 (courts awarding damages under only one statute "apply

whichever . . . statute results in the higher award for the plaintiff" (collecting cases)).

---

[9] The Court need not consider whether cumulative liquidated damages would be available
prior to November 24, 2009 because, as discussed above, the earliest FLSA statute of limitations
period involved in this case dates to January 22, 2010.  (*See* Discussion, *supra*, at Section I(B)).

2. **Prejudgment Interest**

Generally, "[t]he decision to award prejudgment interest is discretionary, and is based on the need to fully compensate the wronged party, [the] fairness of the award, and the remedial purpose of the statute involved." *Najnin*, 2015 WL 6125436, at *3 (citation omitted). A plaintiff who recovers liquidated damages under the FLSA, however, is not also entitled to prejudgment interest on his or her FLSA damages. *See, e.g.*, *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) ("'It is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages.'" (quoting *Begum v. Ariba Disc., Inc.*, No. 12cv6620 (DLC) (KNF), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015))). Given that FLSA liquidated damages serve a compensatory, rather than punitive, purpose, "there is no need to employ pre-judgment interest to restore Plaintiffs to a position they would have otherwise enjoyed absent the wage-protection violation." *Id*. Thus, in an action where both FLSA and NYLL claims are brought, "courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA." *Andrade*, 2016 WL 3141567, at *9 n.7.

In contrast, courts have long held that, under the NYLL, a plaintiff may recover both liquidated damages and pre-judgment interest. *See id.,* at 48; *Begum,* 2015 WL 223780, at *3. Earlier decisions, however, were rooted in the same view of the NYLL's liquidated damages provision as punitive in nature that justified the awarding of cumulative liquidated damages. *See, e.g.*, *Fermin*, 93 F. Supp. 3d at 48 ("because New York State views liquidated damages as punitive, and not compensatory . . . pre-judgment interest is not a duplicative damages award" (citations omitted)); *see also Hernandez*, 2016 WL 3248493, at *35 ("Historically, the case law permitting the award of prejudgment interest alongside . . . liquidated damages . . . relied on the

40

distinction between the punitive purpose of NYLL liquidated damages and the compensatory purpose of prejudgment interest.").  Just as the 2009 and 2011 amendments to the NYLL undermined the distinction between the NYLL and FLSA liquidated damages provisions as punitive and compensatory in nature, respectively, here too the amendments "undermine the distinction between liquidated damages and prejudgment interest."  *Santana*, 2016 WL 4059250, at *5 (citation omitted).  Nevertheless, "a separate basis [now] applies for the award of prejudgment interest alongside a liquidated damages award," namely, an express provision, also added to the NYLL in 2011, "for a plaintiff to receive both types of awards."  *Hernandez*, 2016 WL 3248493, at *35 (citing N.Y. Lab. Law 198(1-a)); *see also Castillo*, 2016 WL 1417848, at *3.  Under the state law, "[p]rejudgment interest is calculated . . . on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law."  *Mejia v. East Manor USA Inc.*, No. 10cv4313 (NG)*, 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (citation omitted), *report and recommendation adopted*, 2013 WL 2152176 (May 17, 2013).

"Pursuant to [New York] state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year."  *Najnin*, 2015 WL 6125436, at *4; *see also* N.Y.C.P.L.R. §§ 5001, 5004.  As to the date from which interest should be found to run, "Section 5001(b) sets forth two methods of calculating prejudgment interest."  *Alvarez v. 215 N. Ave. Corp.*, No. 13cv049 (NSR) (PED), 2015 WL 3855285, at *3 (S.D.N.Y. June 19, 2015) (adopting report and recommendation).

> First, interest may be calculated from 'the earliest ascertainable date the cause of action existed,' N.Y. C.P.L.R. § 5001(b). However, '[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.' *Id.*

41

*Alvarez,* 2015 WL 3855285, at *3. It is within the Court's "'wide discretion'" to "'determin[e] a reasonable date from which to award prejudgment interest.'" *Id.* (quoting *Conway v. Icahn & Co.,* 16 F.3d 504, 512 (2d Cir. 1994)).

**B.      Liquidated Damages and Prejudgment Interest That Should Be Awarded Here**

**1.      Liquidated Damages Awards**

As discussed above, both the FLSA and the NYLL also provide for the recovery of liquidated damages. Indeed, both statutes now mandate that the Court award liquidated damages to a prevailing plaintiff, unless the defendant employer demonstrates that it acted in good faith or had a reasonable basis to believe that it was acting in compliance with the law. (*See* Discussion, *supra*, at Section II(A)(1).) Here, given Defendants' default, they have not met their burden of proving that they acted in good faith, *see Galeana*, 120 F. Supp. 3d at 317, and thus liquidated damages are available under the provisions of both statutes. [10]   29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a). For the reasons described above, however, this Court finds that Plaintiffs may not recover cumulative liquidated damages under both statutes. (*See* Discussion, *supra*, at Section II(A)(1).) Instead, this Court recommends that liquidated damages awards under the FLSA and the NYLL be made in an "overlapping" manner, *Hernandez*, 2016 WL 3248493, at *34, such that, where recovery under one statute is greater for a particular claim or time period,

---

[10] Prior to the November 24, 2009 amendment of the NYLL, liquidated damages were awarded only where plaintiffs could prove that their employers' violations of the NYLL were "willful." *McLean*, 2012 WL 1358739, at *8. "The NYLL 'willfulness' standard under the pre-amendment provision does not appreciably differ from the FLSA's willfulness standard." *Id.* (internal quotation marks and citations omitted). Thus, based on the FLSA willfulness standard, discussed at Section I(A)(3), *supra*, this Court recommends a finding that Defendants' violations of the NYLL were willful, for the purposes of calculating liquidated damages dating prior to the 2009 amendment.

the Court should award recovery under that statute, *see also Hengjin Sun*, 2016 WL 1587242, at

*4 (awarding liquidated damages in this way).

Under the FLSA, liquidated damages are awarded in an amount equal to the unpaid

wages, including unpaid overtime pay, that a plaintiff is entitled to recover under the FLSA.  *See*

*Angamarca*, 2012 WL 3578781, at *8.  Under the NYLL in its current form, liquidated damages

may also be awarded in an amount equal to 100 percent of the total underpayment found to be

due, inclusive of spread-of-hours pay.  *Id*.  Prior to April 9, 2011, however, liquidated damages

under the NYLL were calculated at 25 percent of the unpaid wages.  (*See* Discussion, *supra*, at

Section II(A)(1).)

The claims asserted by the different Plaintiffs in this case may span as many as three

separate time periods, for which liquidated damages must be computed at differing percentages.

First, given the fact that the FLSA has a shorter statute of limitations than the NYLL,

there may be a period for which any given Plaintiff has NYLL claims, prior to the time when that

Plaintiff was also entitled to coverage under the FLSA.  For such periods of NYLL-only

coverage, Plaintiffs are entitled to an award of liquidated damages under the NYLL, in an

amount equal to 25 percent of their awarded minimum wage, overtime, and spread-of-hours pay.

Second, there may be a period, prior to April 9, 2011 (when liquidated damages under the

NYLL increased from 25 percent to 100 percent of unpaid wages), where a Plaintiff was covered

by *both* state and federal law, but where the amount of liquidated damages under the two statutes

differed.  For any such period, the amount of liquidated damages available under the FLSA

would be higher (at 100 percent) than the amount of such damages available under the NYLL (at

25 percent), with respect to any unpaid minimum wages or overtime pay.  For any such period,

Plaintiffs are entitled to receive the higher liquidated damages, under the FLSA, with respect to

43

their claims for unpaid minimum wages and overtime, plus 25 percent of any owed spread-of-hours pay (given that any claim for spread-of-hours pay is purely a state-law claim).

Finally, for each Plaintiff, there is a period when both statutes afford coverage, and both statutes provide for liquidated damages in the same amount of 100 percent of unpaid wages.  For this period (after April 9, 2011), Plaintiffs are entitled to liquidated damages under the NYLL in the amount of 100 percent of their minimum-wage and overtime awards, plus 100 percent of their spread-of-hours awards.

Although Plaintiffs have requested simultaneous liquidated damages under federal and state law (which this Court now finds to be impermissible), their inquest submissions provide charts that break down the underlying amounts owed to each Plaintiff in each of these three types of periods, enabling this Court to determine the appropriate statutory liquidated damages that may be awarded in accordance with the statutory percentages that were in effect at the relevant times.  (Proposed Findings, Exs. G, J, H.)  This Court has reviewed Plaintiffs' submitted Damages Charts, and has adjusted the submitted calculations to eliminate cumulative liquidated damages.  The Court has also adjusted Plaintiffs' submitted calculations based on the fact that, depending upon whether individual Plaintiffs were named in the original Complaint or consented to join the action thereafter, different statute-of-limitations periods are applicable to their claims.  In particular, Plaintiffs' calculations reflect FLSA liquidated damages for all Plaintiffs, based on a limitations period commencing three years prior to the filing of the Complaint; this Court, however, has calculated liquidated damages under the FLSA for the opt-in plaintiffs for the

periods commencing three years before they filed their consents to join the action.[11]  (*See* Section

I(B), *supra*.)

Accordingly, based on the computations reflected in Plaintiffs' exhibits, as adjusted as

described above, I recommend that each of the Plaintiffs be awarded liquidated damages as

follows:

| Plaintiff | Liq. Damages. on Min. Wages & O/T | Liq. Damages on Spread-of-Hours Pay | Total Liquidated Damages |
|---|---|---|---|
| Rodriguez | $14,810.56 | $1,502.08 | $16,312.64 |
| Lliguin | $27,508.93 | $3,828.00 | $31,336.93 |
| Gomez | $4,997.50 | $580.00 | $5577.50 |
| Manuel Angamarca | $40,889.83 | $3,125.48 | $44,015.31 |
| Livio Angamarca | $24,013.96 | $1,594.00 | $25,607.96 |
| Marte | $12,543.30 | $293.63 | $12,836.93 |
| Tenango | $5,343.00 | -- | $5,343.00 |

---

[11] For example, Plaintiffs calculated Manuel Angamarca's liquidated damages based on an FLSA period commencing on January 22, 2010 (three years prior to the date the Complaint was filed), rather than April 10, 2010 (three years prior to the date he filed his consent to become a party plaintiff).  (Proposed Findings, Ex. G.)  Thus, under Plaintiffs' calculations, Manuel Angamarca would receive liquidated damages pursuant to the NYLL, at a rate of 25%, for work he performed from July 24, 2009, through January 21, 2010 (a period he estimates as 26 weeks), and he would receive damages pursuant to both the FLSA and NYLL, at a rate of 125%, for work performed from January 22, 2010, through November 30, 2010 (a period he estimates as 45 weeks).  (*Id*.)  Following adjustment of the statute-of-limitations period as well as removal of cumulative liquidated damages, this Court has revised Manuel Angamarca's damages for unpaid wages and overtime pay for this time period to reflect that he should receive liquidated damages pursuant to the NYLL, at a rate of 25%, for work performed from July 24, 2009 through April 10, 2010 (a period estimated as 37 weeks), and that he should receive liquidated damages pursuant to the FLSA, at a rate of 100%, for work performed from April 11, 2010 through November 30, 2010 (a period estimated as 34 weeks).  During the latter time period, Manuel Angamarca should also receive spread-of-hours liquidated damages, at a rate of 25%.

2.   **Prejudgment Interest Awards**

a.   **Scope of Prejudgment Interest Awards**

Plaintiffs also seek prejudgment interest on their unpaid wages.  As noted, the NYLL provides that a plaintiff may recover both liquidated damages and prejudgment interest on the underlying damages.  *See Hernandez*, 2016 WL 3248493, at *35; *Castillo*, 2016 WL 1417848, at *3.  Nevertheless, "courts do not award statutory prejudgment interest on any portion of the recovery for which liquidated damages were awarded under the FLSA."  *Andrade*, 2016 WL 3141567, at *9 n.7.  Thus, in this case, prejudgment interest should only be awarded on those portions of Plaintiffs' damages for which the Court does not recommend an award of FLSA liquidated damages.  Specifically, prejudgment interest should be awarded on Plaintiffs' spread-of-hours damages, which have no federal counterpart.  Prejudgment interest should also be awarded on damages stemming from (1) any period for which Plaintiffs' claims were covered by the NYLL but were outside of the FLSA statute of limitations, as well as (2) any period where both statutes allowed for liquidated damages in the same amount of 100 percent of unpaid wages, and the Court has opted to award such damages under state law.  (*See supra*; *cf. Xochimitl*, 2016 WL 4704917, at *18 (where court "declined to award cumulative liquidated damages, only awarding liquidating damages under [the] NYLL," plaintiff was therefore "eligible for an award of prejudgment interest on the full . . . damages arising out of his . . . wage claims").  By contrast, prejudgment interest should *not* be awarded on any damages accrued during any period when, for any Plaintiff, the Court awards liquidated damages under the FLSA.

Under the NYLL, prejudgment interest is awarded at a rate of nine percent per annum, *Najnin*, 2015 WL 6125436, at *4; N.Y.C.P.L.R. § 5004, and such interest may be calculated from either the "earliest ascertainable date the cause of action existed" or "from a single

reasonable intermediate date," where damages were incurred at various times, N.Y.C.P.L.R. § 5001(b).  (*See also* Section II(A)(2), *supra*.)

Plaintiffs have included calculations for prejudgment interest in the Damages Charts they submitted for this inquest, and they also included an explanation of their calculations in the Proposed Findings.  (Proposed Findings ¶ 54, Ex. G, H, J.)  In their submissions, Plaintiffs have sought prejudgment interest on all spread-of-hours damages, regardless of the time periods in which they accrued.  (*Id.* ¶ 54, Ex. G.)  Plaintiffs have also sought prejudgment interest on their minimum-wage and overtime claims, but only for the time period of January 22, 2007 through January 22, 2010 (*i.e.*, the period prior to what Plaintiffs have calculated to be the three-year period covered by the FLSA statute of limitations).  Plaintiffs have apparently limited their request for prejudgment interest to this narrow period based on an assumption that, for all later time periods, the Court would award cumulative liquidated damages, thereby foreclosing recovery of prejudgment interest.  (*Id.* ¶ 54 (explaining that prejudgment interest was calculated only for the "NYLL period," as "no interest is charged where FLSA liquidated damages apply"); Ex. G.)  Although Plaintiffs have not sought prejudgment interest for all periods for which, in this Court's view, they are eligible to receive such interest, the Court nonetheless recommends that they be awarded all prejudgment interest to which they are entitled under New York law.[12]

## b.  Prejudgment Interest Award Calculations

As noted above, Plaintiffs have sought prejudgment interest on all spread-of-hours damages, regardless of the time periods during which such damages accrued.  (Proposed

---

[12] On this point, this Court notes that its adjustment of the amounts of prejudgment interest sought by Plaintiffs, so as to conform with law, should not result in any unfair surprise to Defendants, as the Third Amended Complaint seeks prejudgment interest "as applicable."  (3d Am. Compl., Prayer for Relief (p).)

Findings ¶ 54, Ex. G.)  Plaintiffs have also sought prejudgment interest on their minimum-wage

and overtime claims, for the time period of January 22, 2007 through January 22, 2010.

(Proposed Findings ¶ 54.)  Plaintiffs used an interest rate of nine percent per annum to calculate

prejudgment interest, making separate calculations for each of the time periods broken out above

for each of the Plaintiffs' claims, and for each period, commencing interest at that period's

"midpoint" and continuing through February 18, 2014, the date that the Proposed Findings were

filed.  (*Id*. ¶ 54, Ex. G.)  Plaintiffs also separately calculated prejudgment interest, in the same

manner, for lost spread-of-hours pay.  (*See id*.)

     Upon review of Plaintiffs' submitted materials, this Court finds that Plaintiffs'

methodology of calculating prejudgment interest for the forms of relief sought is reasonable,

except for the fact that Plaintiffs failed to calculate the FLSA limitations period properly for the

opt-in plaintiffs.  Because of this miscalculation, Plaintiffs fail to claim prejudgment interest as

to the opt-in plaintiffs for portions of time periods for which this Court recommends an award of

NYLL, rather than FLSA, liquidated damages.  This Court has therefore adjusted Plaintiffs'

calculations to reflect the different limitations periods that are applicable to the different opt-in

Plaintiffs.[13]  (*See* Section I(B), *supra*.)  Further, this Court has made its own calculations of the

---

[13] For example, during the time period from July 24, 2009 through November 30, 2010, Manuel Angamarca calculated his damages under the NYLL from July 24, 2009 through January 21, 2010 (a period he estimated as 26 weeks, for which he would receive prejudgment interest on his minimum wage and overtime claims), and he calculated his damages under the FLSA from January 22, 2010 to November 30, 2010 (a period he estimated as 45 weeks, for which he would not receive prejudgment interest).  (Proposed Findings, Ex. G.)  Based on this Court's view of the appropriate FLSA limitations period, Manuel Angamarca's damages calculations should be adjusted as follows:  the NYLL should be found applicable to his claims from July 24, 2009 through April 10, 2010 (approximately 37 weeks), and he should receive prejudgment interest for minimum wage and overtime claims which accrued during that time, and the FLSA should be found applicable to his claims from April 11, 2010 through November 30, 2010 (approximately 34 weeks), and he should not receive prejudgment interest on those claims.  To calculate the adjusted prejudgment interest, this Court calculated the

prejudgment interest that should be awarded to each Plaintiff on unpaid wages for the period

after April 9, 2011, a period for which the Court has recommended that Plaintiffs be awarded

liquidated damages only under the NYLL.[14]

Accordingly, based on the computations reflected in Plaintiffs' exhibits, as adjusted,

I recommend that each of the Plaintiffs be awarded prejudgment interest as follows:

| Plaintiff | PJI on Min. Wages & O/T Pre-FLSA Period | PJI on Min. Wages & O/T Post-FLSA Period | PJI on Spread-of-Hours Pay | Total Prejudgment Interest |
|---|---|---|---|---|
| Rodriguez | $13,279.90 | $701.14 | $1,911.61 | $15,892.65 |
| Lliguin | $1,313.44 | $3,056.85 | $1,208.41 | $5,578.70 |
| Gomez | -- | $753.38 | $86.45 | $839.83 |
| Manuel Angamarca | $27,394.69 | $1,758.64 | $4,068.09 | $33,221.42 |
| Livio Angamarca | $14,699.24 | $571.91 | $2,223.56 | $17,494.71 |
| Marte | $1,149.42 | $445.40 | $259.17 | $1,853.99 |
| Tenango | -- | $807.86 | -- | $807.86 |

In addition, because prejudgment interest is only calculated herein through the date the

Proposed Findings were filed, February 18, 2014, I also recommend that additional prejudgment

interest be awarded at a rate of nine percent per annum, to be calculated by the Clerk of the

Court, from February 19, 2014 to the date final judgment is entered.

---

minimum wage and overtime damages that Manuel Angamarca would be owed for the 37 weeks
from July 24, 2009 through April 10, 2010, which was $14,137.70 ($382.10 x 37 weeks),
identified the midpoint between July 24, 2009 and April 10, 2010 (which was December 1,
2009), and then calculated interest at a rate of nine percent per annum on the $14,137.70 from
December 1, 2009 through February 18, 2014 (a period of approximately 4.17 years), yielding a
total of $5,305.88 in prejudgment interest for this time period.

[14] For example, during the time period from April 9, 2011 to August 31, 2011, Manuel
Angamarca calculated his unpaid wages as $7,318.50, but no corresponding prejudgment interest
award has been calculated.  (Proposed Findings, Ex. G.)  The midpoint of the two dates is
June 20, 2011.  Interest of nine percent per annum awarded on the $7,318.50 from June 20, 2011
to February 18, 2014 (a period of approximately 2.67 years) totals $1,758.64.

C.   **PG Chelsea's and PG Hoboken's Liability for**
     **Liquidated Damages and Prejudgment Interest**

As discussed in Section I(B)(2), *supra*, this Court recommends that defendants PG Chelsea and PG Hoboken be held liable for plaintiff Rodriguez's claims arising from the work he performed at the Pita Grill Chelsea and Pita Grill Hoboken locations, respectively. With respect to liquidated damages and prejudgment interest, this Court further recommends that Rodriguez be awarded an additional $22,476.11 from PG Chelsea, representing $7,606.62 in liquidated damages relating to his unpaid minimum wage, overtime, and spread-of-hours damages, pertaining to the February 2008 through April 2009 time period that he worked at Pita Grill Chelsea, plus $14,869.80 in prejudgment interest on those state-law damages, calculated through February 18, 2014. (*See* Proposed Findings, Ex. H.)

In addition, this Court recommends that Rodriguez be awarded an additional $2,450 in liquidated damages relating to the unpaid minimum wages owed to him for the time he worked at Pita Grill Hoboken, as well as $238.14 in prejudgment interest, calculated through February 18, 2014. (*Id*., Ex. J.)

III.   **ATTORNEYS' FEES AND COSTS**

A.   **Applicable Legal Standards**

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover [his] reasonable attorney's fees and costs." *Najnin*, 2015 WL 6125436, at *4; s*ee* 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-3). The Court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)

(lodestar calculation creates a "presumptively reasonable fee" (internal quotation marks omitted; citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010))). The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and must provide the Court with sufficient information to assess the fee application, *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.  Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the Court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought, *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987).  In *Arbor Hill*, the Second Circuit emphasized that the "reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190.  In assessing whether an hourly rate is reasonable, the Court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.*  When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate.  *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, the Court should reduce the stated hours accordingly.  *See Seitzman v. Sun Life Assurance Co. of Canada*,

311 F.3d 477, 487 (2d Cir. 2002) (the time component should not reflect excessive hours).  In determining whether an excessive amount of time was expended on the matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, *see Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), as well as the degree of counsel's success, *see Hensley*, 461 U.S. at 436.

In addition to the lodestar amount, attorneys' fees may include "'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted).  These expenses, or "costs," may include photocopying, travel, telephone costs, and postage, *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987), and, in the context of a fee-shifting provision, charges for online research, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004).

### B.    Amount of Attorneys' Fees and Costs That Should Be Awarded

Plaintiffs seek attorneys' fees in the amount of $38,732.50, jointly and severally from Defendants, as compensation for 103.45 hours of work performed in this action.  (Proposed Findings ¶ 101.)  Plaintiffs also seek recovery of costs, in the amount of $575.00.  For the reasons that follow, I recommend that the requested costs be approved and included in the judgment, but that the amount of awarded fees be reduced to $25,860.75.

### 1.    Reasonable Hourly Rates

Plaintiffs were represented by attorneys Michael Faillace ("Faillace"), Joshua Androphy ("Androphy"), Lina Franco ("Franco"), and Charles Fritch ("Fritch"), of the law firm Michael Faillace & Associates, P.C. (the "Faillace Firm"), an employment-law firm located in Manhattan.

(*Id.* ¶ 96.)  Faillace is the "managing member" of the Faillace Firm, and has been practicing labor and employment law since 1983.  (*Id.* ¶ 97.)  He has taught employment-discrimination law as an adjunct professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and Plaintiffs' submissions describe him as a "nationally-renowned speaker and writer on employment law."  (*Id.*)  He bills at a rate of $450 per hour.  (*Id.*)  Androphy is described as a "senior attorney" who has practiced litigation since 2005 and wage-and-hour law since 2013.  (*Id.* ¶ 98.)  He bills at a rate of $400 per hour.  (*Id.*)  Franco is a mid-level associate at the firm who has practiced litigation since 2010 and wage-and-hour law since 2013.  (*Id.* ¶ 99.)  She bills at a rate of $350 per hour.  (*Id.*)  Fritch has apparently left the Faillace Firm, but, at the relevant time, he was an associate there; he is described as having practiced litigation since 2009, and he billed at a rate of $350 per hour.  (*Id.* ¶ 100.)

       The hourly rates requested by Plaintiffs' counsel are slightly higher than the "prevailing [rate] in the community for similar services by lawyers of reasonably comparable . . . experience."  *Blum*, 465, U.S. at 895 n.11.  Indeed, Courts within this District have recently reduced the billing rates requested by attorneys from the Faillace Firm, for work performed on similar wage cases that also resulted in defaults.  *See, e.g., Rosendo v. Everbrighten Inc.*, No. 13cv7256 (JGK) (FM), 2015 WL 1600057, at *8 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted,* 2015 WL 4557147 (July 28, 2015) (collecting cases in which lawyers from the Faillace Firm have been awarded "below [the attorneys'] requested 'regular' hourly rates" because "[m]ost FLSA cases are settled with plaintiffs' counsel recovering a contingency fee," and, as a result, the term "'regular' billing rates . . . in such cases is . . . something of a misnomer," and awarding fees at the rates of $400/hour for Faillace, $300/hour for Androphy, and $225/hour for Franco).  At least one Court in this District recently approved Faillace's

requested rate of $450 per hour, but reduced the hourly rates requested for the Faillace Firm's associates. *See Apolinario v. Luis Angie Deli Grocery Inc.*, No. 14cv2328 (GHW), 2015 WL 4522984, at *3 (S.D.N.Y. July 27, 2015) (noting that Courts in this district have recently "awarded rates between $350 and $450 per hour for partners with significant employment litigation experience," and approving Faillace's requested rate of $450 per hour, but finding that a rate of $300 per hour would be appropriate for senior associates with at least eight years of experience, and finding that rate reasonable for Androphy).

Based on the prevailing rates within this district, this Court recommends that, for purposes of calculating the lodestar, Faillace's requested rate of $450 per hour be approved as reasonable, but that the rate requested for Androphy be reduced to $300 per hour, and the rates requested for both Franco and Fritch be reduced to $225 per hour.

## 2.   **Reasonable Hours**

In support of Plaintiffs' request for attorneys' fees, counsel has provided the Court with a copy of their time records, which appear to have been maintained contemporaneously during the course of the litigation, and which show the billable hours they expended during this action. (Proposed Findings Ex. K.)  Most of the time entries adequately describe reasonable tasks that appear to have been performed within a reasonable amount of time.  (*See id.*, including entries such as "drafted discovery request" for 1.20 hours; "drafted damages chart" for 2.80 hours; and "Reviewed Motion to Amend Complaint" for .75 hours).

A few of counsel's time entries, however, are problematic.  For example, one time entry is too vague to be considered reasonable.  This entry, dated January 2, 2013, reads "Research on Lexis Nexis" for 2.80 hours, billed by Faillace, for a total of $1,260.00.  (*Id.*)  It is unclear what subject matter this research pertains to, and, moreover, given Mr. Faillace's purported experience

and expertise in this field, it is unclear what research he would need to perform, or why the research was not conducted by an associate with a lower billable rate.  Even apart from the level of Faillace's experience, where attorney time records merely show references to "research," without any greater detail, a reduction in the requested fees is warranted.  *See, e.g*., *Vishipco Line v. Charles Schwab & Co.*, Nos. 02cv7823, 7846, 7877, 7915, 7928, 7929 (SHS), 2003 WL 1936142, at * 2 (S.D.N.Y. Apr. 23, 2003) (time entries such as "legal research" too vague to allow court to determine reasonableness of time expended); *Shannon v. Fireman's Fund Ins. Co*., 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2001) (time entries such as "legal research," which do not indicate the subject matter of the work performed, "do not permit a thorough evaluation").

Additionally, multiple time entries record the "filing" of various documents, including the Complaint, consent forms, and notices of appearance.  (*See id*., entries dated Jan. 22, 2013 (referencing filing performed by Faillace), and dated Apr. 9, 2013, Apr. 10, 2013, June 24, 2013 (referencing filings performed by Franco)).  It appears from these time entries that a senior partner and a mid-level associate charged their full hourly rates for filing Court documents, even though a task such as this could have been performed by a junior associate or even a paralegal, billing at a lower hourly rate.  *See, e.g*., *Lane Crawford LLC v. Kelex Trading (CA) Inc*., No. 12cv9190 (GBD) (AJP), 2013 WL 6481354, at *9 (S.D.N.Y. Dec. 3, 2013), *report and recommendation adopted*, 2014 WL 1338065 (Apr. 3, 2014) (finding a reduction in hours to be warranted where a task could have been performed by an associate or paralegal who billed at a lower rate).

Of additional concern is the fact that two of the four aforementioned time entries are "block-billed" (*i.e*., multiple tasks are clustered together in the same billing entry), preventing this Court from being able to ascertain how much time was spent on filing, and how much was

spent on other tasks.  (*See* Proposed Findings Ex. K, entries dated Jan. 22, 2014 (Faillace billing

3.10 hours for finalizing and filing the complaint) and June 24, 2013 (Franco billing 3.10 hours

for finalizing and filing the amended complaint).)  Block billing was also used in time entries

dated August 5, 2013 (Fritch billing 4.5 hours for drafting a notice of motion, review of local

rules, drafting order to show cause, and drafting declaration) and January 30, 2014 (Androphy

billing 9.3 hours for drafting damages submission, review of opposition and email, and

discussion of case).  (*See id*.)  While the practice of block billing "is not prohibited in this

Circuit," *Rodriguez v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999); *see also, e.g*.,

*Hutchinson v. McCabee*, No. 95cv5449 (JFK), 2002 WL 930842, at *4 (S.D.N.Y. Aug. 15,

2001), it is difficult for the Court to evaluate whether time spent on a given task was excessive

where the attorney has grouped different tasks together in a single time entry.  Thus, at times,

courts have reduced or even disallowed requested attorneys' fees where the supporting time

records were not broken out with sufficient detail to enable it to determine the reasonableness of

the time spent on particular tasks.  *See, e.g.*, *Green v. City of New York*, 403 F. App'x 626, 630

(2d Cir. 2010) (affirming hours reduction for pervasive block billing in time entries); *Bank v. Ho

Seo,* No. 06cv15445 (LTS) (RLE), 2009 WL 5341672, at *5 (S.D.N.Y. Dec. 16, 2009) (reducing

a fee award and noting that the process of combining "multiple tasks into one entry" blocks the

court's "efforts to evaluate the reasonableness of any of the listed activities" (internal quotation

marks and citation omitted)), *adopted as modified on other grounds,* 2010 WL 129681 (Jan. 13,

2010); *Soler v. G&U, Inc*., 801 F. Supp. 1056, 1061-62 (S.D.N.Y. 1992) (excluding from

lodestar calculation all time entries with commingled activities).

   Finally, multiple time entries show work that appears to have pertained solely to

defendants who have been dismissed from this action.  For example, entries dated November 1,

2013 and December 23, 2013 (for .75 and 1.0 hours, respectively) solely reference defendant Perez (*see* Proposed Findings, Ex. K), and the block-billed entry for January 20, 2014 includes "review of opposition of Juan Manuel Perez and email from counsel" (*id*.). Further, in an entry dated February 18, 2014, Franco billed .75 hours for review of a settlement agreement. (*Id*.) Given that the Defendants who are the subject of this inquest obviously did not settle this action, it seems likely that counsel's review of a settlement agreement pertained to one or more of the other defendants, whose claims were settled and dismissed from this action. In any event, without greater explanation, Defendants here should not be charged for time billed for work that, from its description, cannot be readily linked to the litigation (or potential settlement) of the claims against them.

In light of these billing issues, which are notable, but not pervasive, this Court recommends a modest, across-the-board reduction of five percent to the hours reportedly billed by Plaintiffs' counsel. *See Carey*, 711 F.2d at 1142, 1146 (noting that a percentage reduction may be applied as a "practical means of trimming fat" from a fee application). This would result in an overall reduction of counsel's time from 103.45 hours (as shown in Proposed Findings, Ex. K) to 98.30 hours, which this Court finds reasonable.

### 3. Lodestar Calculation

Using the reasonable rates and hours described above would result in the following lodestar calculation:

| Attorney | Hourly Rate (as recommended by this Court) | | Hours Billed (reduced by 5%) | | Total |
|---|---|---|---|---|---|
| Faillace | $450/hour | x | 12.92 | = | $5,814 |
| Androphy | $300/hour | x | 11.21 | = | $3,363 |
| Franco | $225/hour | x | 58.67 | = | $13,200.75 |
| Fritch | $225/hour | x | 15.48 | = | $3,483 |
| | | | | | $25,860.75 |

This Court finds no exceptional circumstances here that would warrant deviation from the lodestar, *see Perdue*, 559 U.S. at 552, and therefore recommends that Plaintiffs be awarded attorneys' fees in the amount of $25,860.75.

### 4.   Costs

Plaintiffs additionally seek litigation costs, in the amount of $575.00, for filing and service fees.  (Proposed Findings, Exhibit K.)  The litigation costs are adequately delineated in counsel's contemporaneous billing records, and this Court finds the requested costs to be reasonable and compensable.  Accordingly, I recommend that the requested costs of $575.00 be awarded.

### 5.   Increase of Fees and Costs under NYLL § 198(4), If Judgment Is Not Satisfied

Finally, Plaintiffs request that any judgment for attorneys' fees and costs "provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4)."  (Proposed Findings ¶ 102.)  This request is in accordance with the provisions of the New York Labor Law, and therefore this Court recommends that it be granted.  *See*

58

N.Y. Lab. Law § 198(4); *see also Galicia v. 63-68 Diner Corp.*, No. 13-CV-03689 (PKC), 2015

WL 1469279, at *8 (E.D.N.Y. Mar. 30, 2015).

## CONCLUSION

Based on the foregoing, I respectfully recommend that, based on the defaults of

Defendants Orfaly, PG Chelsea, and PG Hoboken, judgment be entered against them in the

following amounts:

A.    <u>For plaintiff Rodriguez</u>:

    1.    As against defendant Orfaly:

        a.    $59,832.39 in damages (including liquidated damages);
        b.    $15,892.65 in prejudgment interest through February 18, 2014; and
        c.    Additional prejudgment interest, on the damages award, at the rate of 9% per annum from February 19, 2014 to the date of entry of final judgment, in accordance with C.P.L.R. § 5002;

    2.    As against defendant PG Chelsea (jointly and severally with Orfaly):

        a.    $38,033.12 in damages (including liquidated damages);
        b.    $14,869.80 in prejudgment interest through February 18, 2014; and
        c.    Additional prejudgment interest on the damages award, at the rate of 9% per annum from February 19, 2014 to the date of entry of final judgment, in accordance with C.P.L.R. § 5002;

    3.    As against defendant PG Hoboken (jointly and severally with Orfaly):

        a.    $4,900.00 (including liquidated damages); and
        b.    $238.14 in prejudgment interest through February 18, 2014; and
        c.    Additional prejudgment interest on the damages award, at the rate of 9% per annum from February 19, 2014 to the date of entry of final judgment, in accordance with C.P.L.R. § 5002.

B.    For each of the other Plaintiffs (solely as against defendant Orfaly):

    1.    <u>For plaintiff Lliguin</u>:

        a.    $71,025.13 in damages (including liquidated damages);
        b.    $5,578.70 in prejudgment interest through February 18, 2014; and

     c.     Additional prejudgment interest, on the damages award, at the rate of 9% per annum from February 19, 2014 to the date of entry of final judgment, in accordance with C.P.L.R. § 5002;

2.     <u>For plaintiff Gomez</u>:

     a.     $14,955.00 in damages (including liquidated damages);
     b.     $839.83 in prejudgment interest through February 18, 2014; and
     c.     Additional prejudgment interest, on the damages award, at the rate of 9% per annum from February 19, 2014 to the date of entry of final judgment, in accordance with C.P.L.R. § 5002;

3.     <u>For plaintiff Manuel Angamarca</u>:

     a.     $137,591.51 in damages (including liquidated damages);
     b.     $33,221.42 in prejudgment interest through February 18, 2014; and
     c.     Additional prejudgment interest, on the damages award, at the rate of 9% per annum from February 19, 2014 to the date of entry of final judgment, in accordance with C.P.L.R. § 5002;

4.     <u>For plaintiff Livio Angamarca</u>:

     a.     $81,229.56 in damages (including liquidated damages);
     b.     $17,494.71 in prejudgment interest through February 18, 2014; and
     c.     Additional prejudgment interest, on the damages award, at the rate of 9% per annum from February 19, 2014 to the date of entry of final judgment, in accordance with C.P.L.R. § 5002;

5.     <u>For plaintiff Marte</u>:

     a.     $28,910.93 in damages (including liquidated damages);
     b.     $1,853.99 in prejudgment interest through February 18, 2014; and
     c.     Additional prejudgment interest, on the damages award, at the rate of 9% per annum from February 19, 2014 to the date of entry of final judgment, in accordance with C.P.L.R. § 5002; and

6.     <u>For plaintiff Tenango</u>:

     a.     $15,136.00 in damages (including liquidated damages); and
     b.     $807.86 in prejudgment interest through Feb. 18, 2014; and
     c.     Additional prejudgment interest, on the damages award, at the rate of 9% per annum from February 19, 2014 to the date of entry of final judgment, in accordance with C.P.L.R. § 5002.

      C.     For each of the Plaintiffs, an award against Orfaly (and, for plaintiff Rodriguez, a joint and several award against PG Chelsea and PG Hoboken) for:

          1.     $25,860.75 in attorneys' fees;

          2.     $575.00 in costs; and

          3.     a provision in the attorneys' fees and costs award stating that, if any amounts of such fees and costs remain unpaid upon the expiration of 90 days following the issuance of final judgment, or 90 days after the expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by 15 percent, as required by N.Y. Lab. Law § 198(4).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Amended Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe, United States Courthouse, 40 Foley Square, Room 705, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Gardephe. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

If Defendant Orfaly does not have access to cases cited herein that are reported only on Lexis or Westlaw, he may request copies from Plaintiff's counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the *pro se* litigant with copies of [cases and other authorities that

are unpublished or reported exclusively on computerized databases that are] cited in a decision of

the Court and were not previously cited by any party[.]").

Dated: New York, New York
      November 7, 2016

                                        Respectfully submitted,

                                        DEBRA FREEMAN
                                        United States District Judge

Copies to:

Plaintiffs' counsel (via ECF)

Pita Grill Chelsea LLC (d/b/a Pita Grill)
299 Broadway, Suite 1818
New York, New York 10007

Pita Grill of Hoboken, Inc. (d/b/a Pita Grill)
324 Washington Street
Hoboken, New Jersey 07030

Mr. Bennett Orfaly
36 Shore Road Lane
Brooklyn, New York 11209